**SHARYLAND WATER SUPPLY CORPORATION, Petitioner,**

v.

**CITY OF ALTON, Carter & Burgess, Inc., Cris Equipment Company, and Turner, Collie & Braden, Inc., Respondents.**

No. 09–0223.

Supreme Court of Texas.

Argued March 24, 2010.

Decided Oct. 21, 2011.

Rehearing Denied Dec. 16, 2011.

54. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803).

J.W. Dyer, Sharon Almaguer, Dyer & Associates, McAllen, for Petitioner.

Eileen Marie Leeds, Willette & Guerra LLP, Jeffrey D. Roerig, Rene O. Oliveira, Roerig Oliveria & Fisher, Brownsville, TX, Stephen L. Tatum, Tolbert L. Greenwood, Stephanie Smith Harrison, Andrew Derald Keetch, Cantey Hanger LLP, Fort Worth, TX, John B. Wallace, Berker Lymann, P.C., Houston, TX, Marcus Montalvo, Montalvo & Ramirez, Christopher Allen Funk, Walker & Twenhafel, LLP, Walter J. Passmore, The Passmore Law Firm, McAllen, TX, for Respondents.

R. Carson Fisk, Ford Nassen & Baldwin P.C., Austin, TX, pro se.

Shalla Elaine Faria Santos, Allensworth & Porter, LLP, Austin, TX, for Amicus Curiae Texas Council of Engineering Companies, Inc.

Yvonne Roselyn Castillo, Austin, TX, for Amicus Curiae Texas Society of Architects, A State Component of the.

Chief Justice JEFFERSON delivered the opinion of the Court.

A water supply corporation sued a city and the city's contractors after the contractors installed sewer lines above portions of the corporation's water system. A jury found that the city breached its contract with the water supply corporation and that the contractors were negligent. The court of appeals disagreed, rendering a take-nothing judgment against the water

supply corporation, except as to its claim against the city for attorney's fees related to its declaratory judgment action. We agree that the water supply corporation cannot recover against the city, but we disagree that attorney's fees may be awarded. Thus, we affirm in part and reverse in part the judgment as to the city. Because we conclude that the economic loss rule does not preclude a negligence claim against the contractors, however, we affirm in part and reverse in part the court of appeals' judgment with respect to the contractors. We remand this case to the court of appeals to consider issues it did not reach.

## I. Factual and Procedural Background

Alton is a municipality located in Hidalgo County. Sharyland Water Supply Corporation is a non-profit rural water supply corporation with offices in Mission, which is also in Hidalgo County. In the early 1980s, Alton constructed a potable water distribution system for its residents.[1] Alton and Sharyland entered into a Water Supply Agreement under which Alton conveyed its water system to Sharyland. In exchange, Sharyland provided potable water to Alton residents and maintained the system. The Water Supply Agreement gave Sharyland a ten-foot easement and required Sharyland to set rates and regulate the water distribution system's operation. After an initial one-year period, Sharyland was responsible for repairing the system and maintaining the lines in conformity with current or future state agency[2] rules and regulations.

In 1994, Alton received federal and local grants to install a sanitary sewer system,[3] consisting of main sewer lines, residential service connections, and yard lines. 277 S.W.3d at 139–40. A portion of the sewer system was built in the public right-of-way, while another portion connected the sewer system from the public right-of-way to residences. Alton contracted with Carter & Burgess, Inc.; Turner, Collie & Braden, Inc.; and Cris Equipment Company, Inc. (collectively, the contractors) to build the sanitary sewer system. In some locations, Alton's sewer main was installed parallel to Sharyland's water main, so that connecting the sewer main to the residential service line (or "stub-out") required that the sewer line cross the water main. Construction was completed in 1999.

A year later, Sharyland sued Alton for breaching the Water Supply Agreement, alleging that Sharyland suffered significant injury because Alton's sanitary sewer residential service connections were negligently installed in violation of state regulations and industry standards. *Id.* at 140. In particular, Sharyland claimed that the location and proximity of the sewer lines to the water system threatened to contaminate Sharyland's potable water supply. *Id.* Alton counterclaimed, seeking a declaration that the Water Supply Agreement was void. Sharyland also sued the contractors for negligence and breach of contract, contending it was a third party bene-

1. Before installation of the water system, the vast majority of Alton residents were without running water.

2. At the time the parties entered into the agreement, the governing agency was the Texas State Department of Health. The pertinent portion of that agency then became the Texas Natural Resources Conservation Commission, which is now the Texas Commission on Environmental Quality. *See* TCEQ HISTORY, http://www.tceq.texas.gov/about/tceqhistory.html (all Internet materials as visited October 19, 2011 and copy in Clerk of Court's file).

3. *See* U.S. DEP'T OF HOUS. & URBAN DEV., HIDALGO COUNTY, TX CONSOLIDATED PLAN FOR 1995 EXECUTIVE SUMMARY, http://archives.hud.gov/ reports/plan/tx/hidaltx.html.

ficiary of the contractors' agreement with Alton.

Alton filed a jurisdictional plea asserting immunity from suit. The trial court denied the plea, and the court of appeals affirmed in a pre-*Tooke* decision holding that Local Government Code section 51.013's "sue and be sued" language waived immunity. *City of Alton v. Sharyland Water Supply Corp.*, 145 S.W.3d 673, 681 (Tex.App.-Corpus Christi 2004, no pet.); *see also* Tex. Loc. Gov't Code § 51.013; *Tooke v. City of Mexia*, 197 S.W.3d 325, 328–29 (Tex.2006) (holding that "sue and be sued" and "plead and be impleaded" did not clearly and unambiguously waive immunity). Alton did not petition this Court for review of that decision.

Back in the trial court, Sharyland successfully moved for summary judgment on Alton's counterclaim. The trial court also granted Sharyland's motion seeking a judgment declaring that Chapter 30, section 317.13 of the Texas Administrative Code (requiring, among other things, certain minimum distances between potable water and sanitary sewer lines) governed the sewer lines at issue in this case. 277 S.W.3d at 141.

The remaining claims were tried to a jury, which found that Alton breached the Water Supply Agreement, that each of the three contractors breached their contracts with Alton, and that Sharyland was a third party beneficiary of those contracts. The jury also found that the contractors' negligence injured Sharyland. The jury awarded identical damages for each of the three claims: $14,000 in past damages and $1,125,000 in future damages. The jury also found that Sharyland had incurred reasonable attorney's fees for trial and appeal. The trial court rendered judgment for Sharyland against Alton and the contractors, jointly and severally, and denied Sharyland's request for injunctive re-

lief to compel Alton to bring the sewer system into compliance with Administrative Code section 317.13.

As to Alton, the court of appeals held that Chapter 271 of the Local Government Code waived immunity on Sharyland's contract claim. 277 S.W.3d at 144; *see also* Tex. Loc. Gov't Code § 271.152 (waiving immunity for certain contract claims against local government entities). Nonetheless, the court held that the damages awarded were not for a "balance due and owed" nor for "change orders or additional work," and thus were not within the scope of damages allowed by statute. 277 S.W.3d at 146 (citing Tex. Loc. Gov't Code § 271.153). The appellate court rejected Sharyland's arguments that an equitable waiver-by-conduct exception to immunity applied or that Alton's counterclaim negated immunity. *Id.* at 143. Although the court of appeals concluded that Sharyland could not recover attorney's fees on its contract claim against Alton, the court held that Sharyland could, on remand, segregate and attempt to recover fees attributable to its declaratory judgment on the applicability of Administrative Code section 317.13. *Id.* at 147–48.

As to the contractors, the court of appeals held that the economic loss rule barred Sharyland's negligence claim. *Id.* at 155. The court concluded that Sharyland was not a third party beneficiary of Alton's agreement with the contractors, and therefore could not recover either damages or attorney's fees for the contractor's breach. *Id.* The court affirmed the trial court's denial of Sharyland's request for equitable relief but reversed the remainder of the judgment, rendering judgment that Sharyland take nothing as to everything but its attorney's fees claim for the declaratory judgment. *Id.* at 158. We

granted Sharyland's petition for review.[4] 53 Tex.Sup.Ct.J. 285 (Feb. 12, 2010).

## II. Sharyland's claims against Alton

Alton asserts that it is immune from Sharyland's claims. For several reasons, Sharyland disagrees. First, Sharyland argues, Local Government Code chapter 271 waives Alton's immunity from suit. Second, even if chapter 271 is inapplicable, Alton is not entitled to immunity on claims that are germane to, connected with, and properly defensive to its counterclaim. *See Reata Constr. Corp. v. City of Dall.*, 197 S.W.3d 371 (Tex.2006). Finally, Sharyland asks us to recognize an equitable waiver of immunity, given the extent of Alton's purported misconduct and the threat to public health.

### A. Waiver of immunity under Local Government Code section 271.152

■ Local Government Code section 271.152 provides a limited waiver of immunity for local governmental entities that enter into certain contracts. Tex. Loc. Gov't Code § 271.152. To come within the waiver, the contract must be in writing, properly executed, and must state "the essential terms of the agreement for providing goods or services to the local governmental entity." *Id.* § 271.151. As the court of appeals noted, no one disputes that the agreements in this case involve services. 277 S.W.3d at 144. Nor does Alton dispute that section 271.152 applies to its contract with Sharyland. Therefore, the court of appeals correctly concluded that section 271.152 waived Alton's immunity. *Id.*

### B. Damages under Local Government Code section 271.153

■ We next determine whether Sharyland may recover under Local Government Code section 271.153, which limits damage awards against local governmental entities. *See* Tex. Loc. Gov't Code § 271.153(a). Sharyland sought to recover the costs to repair its system, and the court of appeals held that section 271.153(a) prohibits the recovery of money damages for these alleged injuries. 277 S.W.3d at 146. *Id.* We agree.

Section 271.153 limits "[t]he total amount of money awarded in an adjudication brought against a local governmental entity for breach of a contract subject to [subchapter I of chapter 271]." Tex. Loc. Gov't Code § 271.153(a). The provision specifies that recovery is limited to:

(1) the balance due and owed by the local governmental entity under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration;

(2) the amount owed for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract; and

(3) interest as allowed by law.

*Id.*[5] Section 271.153(b) further limits damages by excluding the following forms of recovery under subchapter I:

4. Attorney R. Carson Fisk, the Texas Society of Architects, and the Texas Council of Engineering Companies submitted amicus curiae briefs.

5. Section 271.153 limited recovery to these three categories at the time this suit was initiated. The statute was amended in 2009 to additionally allow for "reasonable and necessary attorney's fees that are equitable and just." *See* Act of May 31, 2009, 81st Leg., R.S., ch. 1266, § 8, 2009 Tex. Gen. Laws 4006, 4007 (codified at Tex. Loc. Gov't Code § 271.153(a)(3)). Those amendments are inapplicable here. *See* Act of June 17, 2005, 79th Leg., R.S., ch. 604, § 2, 2005 Tex. Gen.

(1) consequential damages, except as expressly allowed under Subsection (a)(1);

(2) exemplary damages; or

(3) damages for unabsorbed home office overhead.

*Id.* § 271.153(b). The court of appeals concluded that section 271.153(a) "does not provide Sharyland an avenue for recovery." 277 S.W.3d at 146. The kind of damages sought by Sharyland were not those provided for or contemplated in the Water Supply Agreement and are not a "balance due and owed" under that contract. Nor are these costs the "direct result of owner-caused delays or acceleration," or the "amount owed for change orders or additional work the contractor [was] directed to perform by [the] local governmental entity in connection with the contract." Tex. Loc. Gov't Code § 271.153(a). A plain reading of the statute negates recovery under this chapter. *See, e.g., Hernandez v. Ebrom,* 289 S.W.3d 316, 318 (Tex.2009); *Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex.1985).

**C. Waiver of immunity by counterclaim**

■ Sharyland also argues that Alton is not entitled to immunity because it filed a counterclaim seeking affirmative relief. The court of appeals held that because Alton's counterclaim merely asked for a declaration that the Water Supply Agreement was void, without an accompanying claim for monetary damages, Alton did not waive its immunity. 277 S.W.3d at 143.

Sharyland contends that the court of appeals erred in holding that only counter-claims for monetary damages deprive Alton of immunity. Sharyland asserts that a rescission counterclaim that would transfer a valuable asset should fall within *Reata's* offset holding as well. Sharyland argues that Alton's counterclaim sought affirmative relief because it demanded that Sharyland be divested of valuable property by requesting that the trial court rescind Sharyland's easements and award a portion of the Sharyland Water supply system to Alton.

We need not decide whether Sharyland's argument is viable, however. Even assuming that it is, under our recent precedent, Sharyland could not recover against Alton once its sole counterclaim was defeated on summary judgment. In *Reata Construction Corp. v. City of Dallas,* we held that "when an affirmative claim for relief is filed by a governmental entity, . . . immunity from suit no longer completely exists for the governmental entity." *Reata,* 197 S.W.3d 371, 376 (Tex.2006). We reasoned that

> where the governmental entity has joined into the litigation process by asserting its own affirmative claims for monetary relief, we see no ill befalling the governmental entity or hampering of its governmental functions by allowing adverse parties to assert, as an offset, claims germane to, connected with, and properly defensive to those asserted by the governmental entity.

*Id.* at 376–77. Shortly after *Reata,* we held that a city "does not have immunity from suit for claims germane to, connected with, and properly defensive to its counter-

Laws 1548, 1549; *see also Harris Cnty. Flood Control Dist. v. Great Am. Ins. Co.,* 309 S.W.3d 614, 618 (Tex.App.-Houston [14th Dist.] 2010, no pet.) ("During the 2009 legislative session, section 271.153(a) was amended to add that a plaintiff could recover reasonable and necessary attorney's fees that are equitable and just. . . . However, the amendment to section 271.153(a) took effect on June 19, 2009 and only applies to contracts executed after that date."). References herein to section 271.153 are to the version in effect at the time suit was filed.

claim to the extent [the opposing party's] claims act as an offset against the City's recovery." *City of Irving v. Inform Constr., Inc.,* 201 S.W.3d 693, 694 (Tex. 2006) (per curiam). We explained that, even though the City's counterclaim was compulsory, "[w]e see no difference between a compulsory counterclaim and a counterclaim which is not compulsory insofar as whether the City has immunity from suit." *Id.*

Alton's counterclaim was short-lived; the trial court held that it was barred by section 1926(b) of title 7 of the United States Code. 277 S.W.3d at 141; *see also* 7 U.S.C. § 1926(b).[6] From that point forward, Alton had no pending claim for Sharyland to offset. We recently held that a governmental entity that nonsuits its counterclaim is not entitled to immunity, but the plaintiff nonetheless cannot recover because the government is no longer "pursuing a claim for damages to which an offset would apply." *City of Dall. v. Albert,* 354 S.W.3d 368, 376 (Tex.2011). Even if Alton's rescission counterclaim meant that it was not entitled to immunity from suit at least up to the amount of an offset, the offset disappeared when Alton's counterclaim was defeated on summary judgment. With its counterclaim gone, there were no longer any claims to offset, and Sharyland could not recover a judgment for damages against Alton.

### D. Equitable waiver

■ Finally, Sharyland asserts that a party can waive immunity by conduct. It points to a footnote in *Federal Sign v.*

*Texas Southern University,* 951 S.W.2d 401, 408 n. 1 (Tex.1997), in which we observed that there may be circumstances "where the State may waive its immunity by conduct other than simply executing a contract." Five years after *Federal Sign,* however, we rejected the invitation to recognize such a waiver, holding that it was generally the Legislature's province to waive immunity. *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 857 (Tex.2002). We noted that "[c]reating a waiver-by-conduct exception would force the State to expend its resources to litigate the waiver-by-conduct issue before enjoying sovereign immunity's protections—and this would defeat many of the doctrine's underlying policies." *Id.* We also emphasized that the Legislature had enacted comprehensive schemes that allow contracting parties to resolve breach-of-contract claims against the government. *Id.* By providing these avenues for redress, the Legislature has balanced competing private and public interests—a balance that would be thwarted if we allowed waiver-by-conduct exceptions in breach-of-contract actions against the government.

*IT–Davy* is dispositive here. As in that case, we reject the invitation to recognize a waiver-by-conduct exception in a breach-of-contract suit against a governmental entity. The court of appeals correctly held that such an exception did not apply. 277 S.W.3d at 143.

### III. Sharyland's claims against the contractors

### A. The economic loss rule

---

**6.** That statute applies to federal water and waste facility loans and grants and provides:

> Curtailment or limitation of service prohibited. The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any

> private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

7 U.S.C. § 1926(b).

The court of appeals held that Sharyland suffered only economic losses, which it could not recover in its negligence action against the contractors. *Id.* at 154–55. It is true that parties may be barred from recovering in negligence or strict liability for purely economic losses. This is often referred to as "the economic loss rule." *See Equistar Chems., L.P. v. Dresser–Rand Co.,* 240 S.W.3d 864, 867 (Tex.2007); *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986). The term is something of a misnomer, however, as

> there is not one economic loss rule broadly applicable throughout the field of torts, but rather several more limited rules that govern recovery of economic losses in selected areas of the law. For example, the rules that limit the liability of accountants to third parties for harm caused by negligence or that save careless drivers from liability to the employer of a person injured in an auto accident may be fundamentally distinct from the ones that bar compensation in tort for purely economic losses resulting from defective products or misperformance of obligations arising only under contract.

Vincent R. Johnson, *The Boundary–Line Function of the Economic Loss Rule,* 66 WASH. & LEE L.REV. 523, 534–35 (2009); *see also* Jay M. Feinman, *The Economic Loss Rule and Private Ordering,* 48 ARIZ. L.REV. 813, 813 (2006) ("The most general statement of the economic loss rule is that a person who suffers only pecuniary loss through the failure of another person to exercise reasonable care has no tort cause of action against that person. Because the rule applies to a diverse range of situations, there is not one economic loss rule, but several.").

## 1. Application of the rule in Texas

The economic loss rule was initially formulated to set perimeters in product liability cases. *See* Eddward P. Ballinger, Jr. & Samuel A. Thumma, *The History, Evolution and Implications of Arizona's Economic Loss Rule,* 34 ARIZ. ST. L.J. 491, 492 (2002). As we recently described it, "[t]he economic loss rule applies when losses from an occurrence arise from failure of a product and the damage or loss is limited to the product itself." *Equistar,* 240 S.W.3d at 867; *see also Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145, 151 (1965).[7] In such cases, recovery is generally limited to remedies grounded in contract (or contract-based statutory remedies), rather than tort. *See, e.g., Signal Oil & Gas Co. v. Universal Oil Prods.,* 572 S.W.2d 320, 325 (Tex.1978) ("[W]here only the product itself is damaged, such damage constitutes economic loss recoverable only as damages for breach of an implied warranty under the [Business and Commerce Code]")[8]; *Mid Continent Aircraft Corp. v. Curry Cnty. Spraying Serv. Inc.,* 572 S.W.2d 308, 313 (Tex.1978)("[I]njury to the defective prod-

---

7. *Seely* is considered a seminal case on the economic loss rule. The *Seely* court explained that:

   > A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. Even in actions for negligence, a manufac-

   turer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone.

   *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145, 151 (1965).

8. *See also JCW Elecs., Inc. v. Garza,* 257 S.W.3d 701, 704 (Tex.2008) (noting that implied warranty claim could sound in either contract or tort depending on the damages alleged).

uct itself is an economic loss governed by the Uniform Commercial Code.").

Our earliest articulation of the economic loss rule came in a product liability case. *See Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77 (Tex.1977). In *Nobility Homes*, a mobile-home purchaser sued the manufacturer for defective workmanship and materials. *Id.* at 77–78. We held that the plaintiff could "not recover his economic loss under section 402A of the Restatement (Second) of Torts,"[9] establishing strict liability for defective products, but that he could "recover such loss under the implied warranties of the Uniform Commercial Code."[10] *Id.* at 78. Importantly, we did not hold that economic damages were unavailable, but rather that they were more appropriately recovered through the UCC's thorough commercial-warranty framework. *Id.* at 81 (noting that "[t]he fact that a product injures a consumer economically and not physically should not bar the consumer's recovery").[11] We noted that the UCC protected manufacturers from "unlimited and unforeseeable liability" for economic losses and that its implied warranties were the means by which a consumer should seek redress for economic losses caused by a product defect. *Id.* at 82.

We reprised this theme six years later in *Mid Continent Aircraft Corp. v. Curry County Spraying Service, Inc.*, 572 S.W.2d 308, 312–13 (Tex.1978). Curry bought an overhauled aircraft from Mid Continent and sued after the plane crashed. *Id.* at 309–10. We rejected a strict product liability theory in favor of an implied warranty action under the UCC, because Curry's economic loss (damage to the plane itself) was "merely loss of value resulting from a failure of the product to perform according to the contractual bargain and therefore is governed by the Uniform Commercial Code." *Id.* at 311. We distinguished cases

9. Section 402A(1) of the Second Restatement provides that the seller of a product may be liable to the purchaser for a "defective condition unreasonably dangerous to the user or consumer or to his property." RESTATEMENT (SECOND) OF TORTS § 402A(1). In *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 788–89 (Tex.1967), we held that section 402A's standard governed personal-injury product liability claims in Texas. Sections 1 and 2 of the Third Restatement, adopted in 1998, address liability for sellers or distributors of defective products that harm people or property. RESTATEMENT (THIRD) OF TORTS §§ 1, 2. We have cited but not adopted those standards. *See, e.g., New Tex. Auto Auction Servs., L.P. v. De Hernandez*, 249 S.W.3d 400, 404–06 (Tex. 2008) (noting that the Third Restatement did not apply to auctioneers); *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 42 (Tex.2007) (observing that deviation from manufacturer's design is incorporated into the Third Restatement's manufacturing-defect definition).

10. We also stated that the purchaser could recover his loss under "the theory of common law negligence." *Nobility Homes*, 557 S.W.2d at 78. That conclusion, however, was

based on the manufacturer's failure to challenge on appeal the jury's negligence findings. *Id.* at 83. To the extent this statement may be read to have foreclosed application of the economic loss rule, we note that it was supplanted by *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986), in which we held that even a gross negligence finding would not support the recovery of purely economic losses in a case that could "only be characterized as a breach of contract." *See, e.g., Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.*, 29 S.W.3d 282, 286 (Tex. App.-Houston [14th Dist.] 2000, no pet.); *see also* William Powers, Jr. & Margaret Niver, *Negligence, Breach of Contract, and the "Economic Loss" Rule*, 23 TEX. TECH L.REV. 477, 487 (1992) ("Any confusion about the meaning of *Nobility Homes* has been laid to rest by *Jim Walter Homes*.").

11. *See also* Powers & Niver, 23 TEX. TECH L.REV. at 482 ("It would be problematic to have a tort theory similar to warranty that is not bound by the other requirements of the [UCC], such as privity, notice, disclaimers, and remedy limitations.") (footnotes omitted).

involving personal injury or damage to property other than the product itself, noting that those damages could be recovered under strict liability theories. *Id.* at 311–13. We held that "[i]n transactions between a commercial seller and commercial buyer, when no physical injury has occurred to persons or other property, injury to the defective product itself is an economic loss governed by the [breach of warranty provisions of the] Uniform Commercial Code." *Id.* at 313. In another case decided the same day, we permitted a purchaser who had suffered collateral property damage in addition to damage to the product itself to recover under either a strict liability theory or a UCC implied warranty theory. *See Signal Oil & Gas Co. v. Universal Oil Prods.,* 572 S.W.2d 320, 325–26 (Tex.1978).

Subsequently, in *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex. 1986), we examined the difference between contract duties and tort duties arising under contractual relationships. That case involved a claim by homeowners against their builder, and we had to decide whether an independent tort supported an award of exemplary damages against the builder. *Jim Walter Homes,* 711 S.W.2d at 617. Because the injury resulted from negligent construction, we held that such disappointed expectations could "only be characterized as a breach of contract, and breach of contract cannot support recovery of exemplary damages." *Id.* at 618.

Relying on the tort and contract distinctions articulated in *Jim Walter Homes,* we again applied the economic loss rule in *Southwestern Bell Telephone Co. v. DeLanney,* 809 S.W.2d 493 (Tex.1991). In that case, we considered "whether a cause of action for negligence is stated by an allegation that a telephone company negligently failed to perform its contract to publish a Yellow Pages advertisement." *DeLanney,* 809 S.W.2d at 493. We held that, because the plaintiff sought damages for breach of a duty created under contract, as opposed to a duty imposed by law, tort damages were unavailable. *Id.* at 494. Quoting *Jim Walter Homes,* we explained that

> [t]he acts of a party may breach duties in tort or contract alone or simultaneously in both. The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone.

*Id.* at 495 (quoting *Jim Walter Homes,* 711 S.W.2d at 618).

We later declined to extend *DeLanney* to a fraudulent inducement claim, even when the claimant suffered only economic losses to the subject of a contract. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 46 (Tex.1998). We reasoned that Texas law has long imposed a duty to refrain from fraudulently inducing a party to enter into a contract, and our prior decisions made it clear that tort damages were not precluded simply because a fraudulent representation caused only an economic loss. *Id.* at 46–47.[12] Finally and most recently, we discussed the economic loss rule in *Equistar Chemicals, L.P. v. Dresser–Rand Co.,* 240 S.W.3d 864 (Tex.2007). We noted that the rule "applies when losses from an occurrence arise from failure of a product and the damage or loss is limited to the

---

12. *But see D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.,* 973 S.W.2d 662, 663 (Tex.1998) (per curiam)(explaining that *Formosa* did not extend to negligent misrepresentation claims, which are viable only if a party sustains an injury independent from those stemming from a contractual breach).

product itself." *Equistar,* 240 S.W.3d at 867.

Thus, we have applied the economic loss rule only in cases involving defective products or failure to perform a contract. In both of those situations, we held that the parties' economic losses were more appropriately addressed through statutory warranty actions or common law breach of contract suits than tort claims. Although we applied this rule even to parties not in privity (*e.g.* a remote manufacturer and a consumer),[13] we have never held that it precludes recovery completely between contractual strangers in a case not involving a defective product—as the court of appeals did here.

The court of appeals relied on a different sort of economic loss rule—one that says that you can never recover economic damages for a tort claim—to reject Sharyland's negligence claim against the contractors. That court analyzed whether Sharyland's claim was one for property damage or for purely economic loss and concluded it was the latter. 277 S.W.3d at 154–55 (noting that "some physical destruction of tangible property must occur" for there to be property damage). Because there was no evidence that the sewer lines had contaminated the water

supply, the court of appeals reasoned, Sharyland had not suffered property damage, and the economic loss rule precluded a damage award. *Id.*

There are at least two problems with this analysis. First, it both overstates and oversimplifies the economic loss rule. *See, e.g., Giles v. GMAC,* 494 F.3d 865, 874 (9th Cir.2007) (noting that "many courts have stated in overly broad terms that purely economic losses cannot be recovered in tort" but "[s]uch broad statements are not accurate"). To say that the economic loss rule "preclude[s] tort claims between parties who are not in contractual privity" and that damages are recoverable only if they are accompanied by "actual physical injury or property damage," 277 S.W.3d at 152–53, overlooks all of the tort claims for which courts have allowed recovery of economic damages even absent physical injury or property damage. *See, e.g., Formosa,* 960 S.W.2d at 47; *see also* Powers & Niver, 23 Tex. Tech L.Rev. at 492 (noting that "the 'economic loss' rule has never been a general rule of *tort* law; it is a rule in *negligence* and *strict product liability*" and observing that "[p]ure economic loss is commonly recoverable in certain torts"). Among these are negligent misrepresentation,[14] legal[15] or accounting[16] malpractice, breach of fiduciary duty,[17] fraud,[18] fraudu-

---

13. *See Nobility Homes,* 557 S.W.2d at 77.

14. *See, e.g., Grant Thornton L.L.P. v. Prospect High Income Fund,* 314 S.W.3d 913, 920 (Tex. 2010) (confirming that, under Texas law and the Restatement (Second) of Torts section 552, auditors could be liable to third parties for negligent misrepresentation); *Fed. Land Bank Ass'n of Tyler v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991) (citing Restatement (Second) of Torts § 552B)(adopting Restatement measure of damages for negligent misrepresentation claims, which includes the difference in value and other consequential damages that can properly be classified as pecuniary losses).

15. *See, e.g., Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.,*

299 S.W.3d 106, 122 (Tex.2009) (holding that "a malpractice plaintiff may recover damages for attorney's fees paid in the underlying case to the extent the fees were proximately caused by the defendant attorney's negligence").

16. *See, e.g., Atkins v. Crosland,* 417 S.W.2d 150, 152–53 (Tex.1967) (holding that tax losses were recoverable. in accounting malpractice case).

17. *See, e.g., ERI Consulting Eng'rs, Inc. v. Swinnea,* 318 S.W.3d 867, 873–74 (Tex.2010) (noting that fee forfeiture, as well as actual damages, are recoverable for breach of fiduciary duty).

lent inducement,[19] tortious interference with contract,[20] nuisance,[21] wrongful death claims related to loss of support from the decedent,[22] business disparagement,[23] and some statutory causes of action.[24]

Moreover, the question is not whether the economic loss rule should apply where there is no privity of contract (we have already held that it can), but whether it should apply at all in a situation like this. Merely because the sewer was the subject of *a* contract does not mean that a contractual stranger is necessarily barred from suing a contracting party for breach of an independent duty. If that were the case, a party could avoid tort liability to the world simply by entering into a contract with one party. The economic loss rule does not swallow all claims between contractual and commercial strangers.

The court of appeals' blanket statement also expands the rule, deciding a question we have not—whether purely economic losses may ever be recovered in negligence or strict liability cases. This involves a third formulation of the economic loss rule, one that does not lend itself to easy answers or broad pronouncements. *See, e.g.,* Johnson, 66 Wash. & Lee L.Rev. at 527 (noting that outside the realm of product- or contract-related claims, "the operation of the economic loss rule is not well mapped, and whether there is a 'rule' at all is a subject of contention").[25]

18. *See, e.g., Trenholm v. Ratcliff,* 646 S.W.2d 927, 933 (Tex.1983) (upholding a jury's award of lost profits for fraud claim); *see also* Tex. Bus. & Com.Code § 27.01 (authorizing actual damages for fraud in certain real estate or stock transactions).

19. *See, e.g., Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex.1998) (holding that "tort damages are recoverable for a fraudulent inducement claim irrespective of ... whether the plaintiff only suffers an economic loss related to the subject matter of the contract").

20. *See, e.g., Am. Nat'l Petroleum Co. v. Transcon. Gas Pipe Line Corp.,* 798 S.W.2d 274, 278 (Tex.1990) ("In a commercial relations tort, the fact that the damages are 'economic' does not mean that they may not be damages for the tort. The basic measure of actual damages for tortious interference with contract is the same as the measure of damages for breach of the contract interfered with, to put the plaintiff in the same economic position he would have been in had the contract interfered with been actually performed.").

21. *See, e.g., Comminge v. Stevenson,* 76 Tex. 642, 13 S.W. 556, 558 (1890) (holding that depreciation in property value is recoverable in nuisance claim).

22. *See, e.g., Francis v. Atchison, Topeka & Santa Fe Ry. Co.,* 113 Tex. 202, 253 S.W. 819 (1923).

23. *See, e.g., Hurlbut v. Gulf Atl. Life Ins. Co.,* 749 S.W.2d 762, 767 (Tex.1987) (noting that proof of special damages was required in business disparagement case and that plaintiff must "establish pecuniary loss that has been realized or liquidated as in the case of specific lost sales").

24. *See, e.g.,* Tex. Bus. & Com.Code § 17.45 (defining "[e]conomic damages" as "compensatory damages for pecuniary loss, including costs of repair and replacement"); *id.* § 17.50 (authorizing recovery of economic damages for certain deceptive trade practices); *see also, e.g.,* Johnson, 66 Wash. & Lee L.Rev. at 529–32 (noting exceptions to economic loss rule including negligent misrepresentation, defamation, professional malpractice, breach of fiduciary duty, nuisance, loss of consortium, wrongful death, spoliation of evidence, unreasonable failure to settle a claim within insurance policy limits, and certain statutory causes of action); Powers & Niver, 23 Tex. Tech L.Rev. at 492, 496 (noting that purely economic losses may be recovered in cases involving fraud, negligent misrepresentation, or intentional interference with contract).

25. This is a complex area of the law that evades precise categorization. *See, e.g.,* Johnson, 66 Wash. & Lee L.Rev. at 536 (observing that "[t]he confusing mass of precedent relating to tort liability for economic loss has yet to be disentangled and expressed with the clarity commonly found with respect to other

■ This is an area we need not explore today, however, because the court of appeals erred in concluding that Sharyland's water system had not been damaged. *See* 277 S.W.3d at 154 (noting that the sewer lines had not corroded the waterlines). Sharyland's system once complied with the law, and now it does not. Sharyland is contractually obligated to maintain the system in accordance with state law and must either relocate or encase its water lines. These expenses, imposed on Sharyland by the contractors' conduct, were the damages the jury awarded.[26] Costs of repair necessarily imply that the system was damaged, and that was the case here. Sharyland presented evidence that it experiences between 100 and 150 water system leaks each year. A break in the water line threatens contamination. There was evidence that when Sharyland excavated a representative sample of sixty-six sewer crossings, sixty of them had been illegally installed, and there was at least one leaking sewer pipe located six inches above a water pipe. There was also evidence that approximately 340 locations would require remediation. We disagree that the economic loss rule bars Sharyland's recovery in this case.

The contractors argue that permitting recovery in this case will upend the industry because construction contracts are negotiated based on anticipated risks and liabilities, and allowing parties like Sharyland to recover in tort would skew that analysis. Construction defect cases, however, usually involve parties in a contractual chain who have had the opportunity to allocate risk, unlike the situation faced by Sharyland. While it is impossible to analyze all the situations in which an economic loss rule may apply, it does not govern here. The rule cannot apply to parties without even remote contractual privity, merely because one of those parties had a construction contract with a third party, and when the contracting party causes a loss unrelated to its contract.

## B. Third party beneficiary status

■ Sharyland argues that there was evidence to support the jury finding that Sharyland was a third party beneficiary of the agreements between Alton and the contractors. The court of appeals disagreed, holding that Sharyland was "no more than an incidental beneficiary" to the contract. 277 S.W.3d at 152. Because the contracts entered into between Alton and the contractors make no reference to Sharyland and indicate no intention to confer a benefit on it, we agree with the court of appeals that Sharyland was not a third party beneficiary of those contracts.

■ As noted by the court of appeals, "[t]here is a presumption against conferring third-party beneficiary status on non-contracting parties." *Id.* at 149; *see also S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex.2007) (per curiam). We stated as much in another case involving a

tort law topics"). The American Law Institute is at work on a section of the Third Restatement that will focus on torts that involve economic loss, or pecuniary harm not resulting from physical harm or physical contact to a person or property. Although the ALI's Council approved the start of the project in 2004, thus far no part of the work has been approved by the Council or by the membership. See Am. Law Inst., Current Projects: Restatement Third, Torts: Liability for Economic Harm, http://www.ali.org/index.cfm?fuseaction=projects.proj_ip&projectid=15; *see also* Johnson, 66 Wash. & Lee L.Rev. at 535–36 (noting that none of the project's initial drafts were approved by the American Law Institute).

26. The jury awarded Sharyland "[t]he reasonable cost of the repairs necessary to restore the property to its condition immediately before the injury."

water supply agreement between a local water authority and a city, under which a citizen organization claimed to be a third party beneficiary of the agreement. *Lomas*, 223 S.W.3d at 306. We noted that

> [i]n deciding whether a third party may enforce or challenge a contract between others, it is the contracting parties' intent that controls.... The intent to confer a direct benefit upon a third party "must be clearly and fully spelled out or enforcement by the third party must be denied." ... Incidental benefits that may flow from a contract to a third party do not confer the right to enforce the contract.... A third party may only enforce a contract when the contracting parties themselves intend to secure some benefit for the third party and entered into the contract directly for the third party's benefit.

*Id.* (citations omitted). Importantly, " 'the fact that a person is directly affected by the parties' conduct, or that he 'may have a substantial interest in a contract's enforcement, does not make him a third-party beneficiary.' " *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1075 (5th Cir. 2002) (applying Texas law and quoting *Loyd v. ECO Res., Inc.*, 956 S.W.2d 110, 134 (Tex.App.-Houston [14th Dist.] 1997, no pet.)).

Sharyland does not meet the criteria necessary to confer third party beneficiary status. Sharyland is neither mentioned in the contracts themselves, nor is there evidence that Alton and the contractors intended to confer a direct benefit on Sharyland. Alton contracted with Carter & Burgess to manage construction of the sewer system; with Turner, Collie & Braden to engineer and inspect the system; and with Cris Equipment Company to build the system. While Sharyland may incidentally benefit from the contractors' promises to place the sewer lines in accordance with the plans and specifications, the contract falls far short of "clearly and fully spell[ing] out" such an intent. *Lomas*, 223 S.W.3d at 306. The primary purpose of these agreements was to provide for the construction of a sewer system in Alton, not to benefit Sharyland. *Cf. Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 900 (Tex.2011) (noting that contract had "no purpose whatever" other than to benefit third party). We agree with the court of appeals that Sharyland was not a third party beneficiary of the agreement between Alton and the contractors. 277 S.W.3d at 152.

## IV. Administrative Code Chapter 30, section 317.13

■ As an alternate basis for affirming the court of appeals' judgment, the contractors urge that the trial court incorrectly held that section 317.13 of the Texas Administrative Code, which was in effect at the time the dispute arose, applied to the sewer lines in this case.[27] The contractors argue that Sharyland's entire case hinged on the 317.13 violation, and without it, there is no basis for finding that the contractors were negligent.

Section 317.13 provides, in pertinent part:

> The following rules apply to separation distances between potable water and wastewater plants, and waterlines and sanitary sewers.
> (1) Waterline/new sewer line separation. When new sanitary sewers are installed, they shall be installed no closer to waterlines than nine feet in all di-

---

27. Section 317.13 was repealed and has since been substantially incorporated into section 217.53 of the Administrative Code. *See* 30 Tex. Admin. Code § 217.53; 30 Tex. Admin. Code § 317.13(1)(B), *repealed* 33 Tex. Reg. 6928 (2008).

rections. Sewers that parallel water-lines must be installed in separate trenches. Where the nine-foot separation distance cannot be achieved, the following guidelines will apply.

(A) Where a sanitary sewer parallels a waterline, the sewer shall be constructed of cast iron, ductile iron, or PVC meeting ASTM specifications with a pressure rating for both the pipe and joints of 150 psi. The vertical separation shall be a minimum of four feet between outside diameters. The sewer shall be located below the waterline.

(B) Where a sanitary sewer crosses a waterline and the sewer is constructed of cast iron, ductile iron, or PVC with a minimum pressure rating of 150 psi, an absolute minimum distance of six inches between outside diameters shall be maintained. In addition, the sewer shall be located below the waterline where possible and one length of the sewer pipe must be centered on the waterline.

30 TEX. ADMIN. CODE § 317.13(1)(A)–(B).

Sharyland asserts that the contractors failed to maintain the required minimum distance between water lines and sewer lines, failed to center the sewer pipes, and negligently installed those pipes above the water lines in violation of section 317.13. The contractors contend that section 317.13 applied purely to sewer mains, and not the residential sewer lines at issue here.[28] On Sharyland's request for declaratory relief, the trial court found that section 317.13 "applied to the situation presented in this case" and that "[t]he term 'sewer in the context of ... [c]hapter 317

refers to a 'conduit which carries off water or waste matter' and includes sanitary sewer residential service connections." The court of appeals did not reach this issue, as it reversed and rendered judgment that Sharyland take nothing.

Section 317.13, which had the force and effect of a statute and must be construed accordingly,[29] is unambiguous. Accordingly, we construe it as a matter of law. The terms "sewer" and "sanitary sewer" were not defined in section 317.13 or anywhere in Chapter 30 of the Administrative Code, so we give them their ordinary meaning. *See, e.g., Guitar Holding Co., L.P. v. Hudspeth Cnty. Underground Water Conservation Dist. No. 1*, 263 S.W.3d 910, 915 (Tex.2008). Generally, "sewers" or "sanitary sewers" include residential service lines, not just sewer mains. In fact, many definitions explicitly use these terms to mean domestic or residential sewer lines. *See, e.g.,* FRANCOIS G. BRIERE, DRINKING-WATER DISTRIBUTION, SEWAGE, AND RAINFALL COLLECTION 144 (2d ed. 2007) ("[A] sanitary sewer system transports domestic wastewater, which includes water used for domestic consumption, water from commercial districts and industrial establishments, ... and water considered as parasitic....."); THOMAS J. DAY, SEWER MANAGEMENT SYSTEMS 97 (2000) ("The most commonly recognized sewer type is the sanitary sewer, which is designed to carry domestic sewage and processed industrial wastes to a treatment facility. Domestic sewage is that wastewater generated by residential households."); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2012 (2002) (defining "sanitary sewer" as "a sewer to dispose of sewage but not water from ground, surface, or storm"); MERRIAM-WEBSTER'S COL-

---

28. Residential service connections are the only portions of Alton's sewer system at issue in this case. 277 S.W.3d at 140.

29. *State Office of Risk Mgmt. v. Lawton,* 295 S.W.3d 646, 648 (Tex.2009).

LEGIATE DICTIONARY 1036 (10th ed.1993) (defining "sanitary sewage" as "of, relating to, or used in the disposal esp. of domestic waterborne waste"); *see also* THE EDWARDS AQUIFER WEBSITE, GLOSSARY OF WATER RESOURCE TERMS, http://www.edwardsaquifer.net/glossary.html#S (defining "sanitary sewers" as "underground pipes that carry off only domestic or industrial waste, not storm water").

■ The contractors complain that the trial court improperly excluded testimony from two TNRCC engineers who asserted that they believed section 317.13 applied only to "sewer mains" (and not "service connections" like those at issue here) and that Alton's sewer system did not violate section 317.13. Sharyland responded that the TNRCC employees' testimony was not formal policy, and was inconsistent with a rational reading of the law. The trial court, after determining that section 317.13 applied, excluded the testimony. The contractors urge that this was reversible error. Again, we disagree.

Even assuming that the interpretation of individual officials could be persuasive when determining the meaning of an ambiguous statute or rule, we find no reason to go beyond the text here. Nowhere in chapter 317 were residential service connections excluded from the general meaning of "sewers" or "sanitary sewers." To the contrary, the breadth of the terms implies the definition that dictionaries give it: that is, underground pipes carrying domestic or industrial waste. We agree with the trial court that section 317.13 applied to the sewer lines in this case, and the trial court did not err in excluding the engineers' testimony.

## V. Calculating damages

### A. Equitable relief

■ The trial court held, and the court of appeals agreed, that the existence of a remedy at law for Sharyland foreclosed the availability of equitable relief in the form of an injunction or specific performance. We agree. Sharyland contends that an award of money damages "is not as complete, practical, prompt, and efficient as the requested equitable remedies." We have stated that " '[t]he general rule at equity is that before injunctive relief can be obtained, it must appear that there does not exist an adequate remedy at law.' " *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 210 (Tex.2002) (quoting *Republic Ins. Co. v. O'Donnell Motor Co.*, 289 S.W. 1064, 1066 (Tex.Civ.App.-Dallas 1926, no writ)). We need not decide whether an order mandating that Alton repair its lines is the more efficient means to remedy the mislaid sewer pipes, because the damages awarded will compensate Sharyland for its repair costs. *See Repka v. Am. Nat'l Ins. Co.*, 143 Tex. 542, 186 S.W.2d 977, 980 (1945) ("[S]ince the legal remedy of the plaintiff is complete, certain, and adequate, there is no necessity for his invoking the aid of the equitable jurisdiction." (quoting 1 POMEROY'S EQUITY JURISPRUDENCE, § 254, at 429 (4th ed.))). Because an adequate remedy at law exists, we agree with the court of appeals that the availability of a legal remedy foreclosed Sharyland's suit for an injunction or specific performance. 277 S.W.3d at 157.

### B. Joint and several liability and attorney's fees against the contractors

■ The court of appeals held that the trial court erred in imposing joint and several liability on the contractors[30] and awarding attorney's fees against them. 277 S.W.3d at 155. We agree.

---

**30.** The trial court also made Alton jointly and severally liable for the damages, but because we have held that Sharyland cannot recover against Alton, we do not address this issue.

Texas law permits joint and several liability for most actions based in tort, as long as "the percentage of responsibility attributed to the defendant with respect to a cause of action is greater than 50 percent." *See* TEX. CIV. PRAC. & REM.CODE § 33.013(b)(1); *JCW Elecs., Inc. v. Garza,* 257 S.W.3d 701, 705 (Tex.2008) ("[S]ection 33.003 reveals that a 'cause of action based on tort' includes negligence, products liability, and any other conduct that violates an applicable legal standard . . . .") (quoting TEX. CIV. PRAC. & REM.CODE § 33.002(a)). In this case, the jury found that, between the contractors, C & B was 20% negligent, Cris was 40% negligent, and TCB was 40% negligent. Because none of the contractors was attributed a percentage of responsibility greater than 50%, the proportionate responsibility statute does not permit joint and several liability on this basis. *See* TEX. CIV. PRAC. & REM.CODE § 33.013(b)(1).

As to Sharyland's attorney's fee claim against the contractors, we note that it is based on its third party beneficiary theory, which we have rejected. *See* TEX. CIV. PRAC. & REM.CODE § 38.001; *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1,* 908 S.W.2d 415, 427–28 (Tex.1995); *Dairyland Cnty. Mut. Ins. Co. of Tex. v. Childress,* 650 S.W.2d 770, 775–76 (Tex. 1983). Sharyland may not, therefore, recover its attorney's fees against the contractors.

### C. Attorney's fees against Alton

■ The court of appeals held, and we agree, that Sharyland could not recover attorney's fees for Alton's breach of contract, because damages were not recoverable under Local Government Code section 271.153. 277 S.W.3d at 147. The court of appeals also held, however, that Sharyland could recover attorney's fees against Alton on the declaratory judgment claim, and it remanded to give Sharyland an opportunity to segregate those fees. *Id.* at 147–48. But Sharyland's request for a declaration that section 317.13 applied to this case was merely a subset of its larger claim that Alton breached the Water Supply Agreement. We have held that "private parties cannot circumvent [a governmental entity's] immunity from suit by characterizing a suit for money damages, such as a contract dispute, as a declaratory-judgment claim." *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 856 (Tex.2002). Because the declaration was part of Sharyland's breach-of-contract claim, a claim on which Sharyland cannot recover, it was error to remand for an award of attorney's fees on that basis. Accordingly, we reverse that portion of the court of appeals' judgment.

### VI. Conclusion

We reverse the court of appeals' judgment with respect to the contractors, because the economic loss rule does not preclude Sharyland's negligence claim against them. We also reverse and render that part of the court of appeals' judgment regarding Sharyland's attorney's fees against Alton for the declaratory judgment claim. We affirm the remainder of the court of appeals' judgment with regard to Sharyland's breach of contract claim against Alton; Sharyland's third party beneficiary claim against the contractors; Sharyland's claim for attorney's fees against the contractors and Alton; joint and several liability against the contractors; and Sharyland's claim for equitable relief. *Id.* at 157. We remand to that court to address the issues it did not reach. We thus affirm in part, reverse and render in part, and reverse and remand in part the court of appeals' judgment. TEX. R.APP. P. 60.2(a), (c), (d).