ACCEPTED
15-25-00011-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
9/18/2025 4:10 PM
CHRISTOPHER A. PRINE
CLERK

**15-25-00011-CV**

In The Fifteenth Court of Appeals
Austin, Texas

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
9/18/2025 4:10:27 PM
CHRISTOPHER A. PRINE
Clerk

THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM,
THE UNIVERSITY OF TEXAS SYSTEM, AND
THE UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER,

*Appellants,*

v.

GENSETIX, INC.,

*Appellee.*

*On Appeal From the 152nd District Court of Harris County, Texas*

REPLY BRIEF OF APPELLANTS

**David E. Harrell, Jr.**
  State Bar No. 00793905
  David.Harrell@troutman.com
**Deanna Markowitz Willson**
  State Bar No. 24092759
  Deanna.willson@troutman.com
TROUTMAN PEPPER LOCKE LLP
600 Travis St., Suite 2800
Houston, Texas 77002

**Thomas F. Loose**
  State Bar No. 12561500
  Tom.Loose@troutman.com
TROUTMAN PEPPER LOCKE LLP
2000 Ross Avenue, Suite 2800
Dallas, Texas 75201

**Terri M. Abernathy**
  State Bar No. 24122680
  Terri.Abernathy@oag.texas.gov
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548, Capitol
Austin, TX 78711

ATTORNEYS FOR APPELLANTS

ORAL ARGUMENT REQUESTED

# Table of Contents

**Page**

Argument in Reply ................................................................................2

    I.     Gensetix's statement of facts distracts from the simple contract dispute underlying this case..............................3

          A.     The parties' contract and the contractual dispute..............3

               1.     The basis of Gensetix's claims: the License................4

               2.     Gensetix's statement of facts and incorrect statements regarding findings. ...................................7

          B.     There are no factual findings — even implied ones. ..........9

          C.     This Court can rule on the undisputed facts and law. .......................................................................11

    II.    Sovereign immunity bars Gensetix's breach of contract claim. ...............................................................14

          A.     The breach of contract claim that Gensetix pled. ..............14

          B.     The Texas Supreme Court and this Court have unequivocally rejected a waiver-by-conduct exception to sovereign immunity in breach of contract cases. ...................................................17

          C.     Gensetix does not and cannot rebut binding precedent. ...........................................................21

          D.     Even if *State Street's* waiver-by-conduct theory were viable, Gensetix has not alleged facts that warrant its application to this standard contract dispute...............23

    III.   Gensetix's constitutional takings claim attempts to repackage a contract claim for which UT is immune. ................25

          A.     Gensetix cannot circumvent sovereign immunity through creative pleading.......................................26

          B.     Regardless, Gensetix's takings claim still fails because UT lacked the necessary intent. .............................29

IV.    Texas law entitles UT to sovereign immunity to comport with legislative intent and the espoused political, pecuniary, and pragmatic policies....................................34

V.    Conclusion and Prayer ................................................................37

Certificate of Compliance ........................................................................38

Certificate of Service .................................................................................39

# INDEX OF AUTHORITIES

**Cases**                                                **Page(s)**

*Burns v. City of San Antonio,*
712 S.W.3d 194 (Tex. App.—15th Dist. 2025, pet. filed) ............................36

*Canadian Riv. Mun. Water Auth. v. Hayhook, Ltd.,*
No. 07-20-00196-CV, 2021 WL 1202346 (Tex. App.—Amarillo
Mar. 30, 2021, no pet.) (mem. op.) .......................................................32, 33

*Catalina Dev., Inc. v. Cnty. of El Paso,*
121 S.W.3d 704 (Tex. 2003) ...............................................................19

*City of Anson v. Harper,*
216 S.W.3d 384 (Tex. App.—Eastland 2006, no pet.) ................................30

*Clint Indep. Sch. Dist. v. Marquez,*
487 S.W.3d 538 (Tex. 2016) ...............................................................27

*CPS Energy v. Elec. Reliability Council of Tex.,*
671 S.W.3d 605 (Tex. 2023) ...............................................................36

*Curadev Pharma Pvt. Ltd. v. The Univ. of Tex. Sw. Med. Ctr.,*
No. 15-25-00004-CV, 2025 WL 2414661 (Tex. App.—15th
Dist. Aug. 21, 2025, no pet. h.).................................................*passim*

*Dallas Cnty. Mental Health & Mental Retardation v. Bossley,*
968 S.W.2d 339 (Tex. 1998)...............................................................27

*English v. Fischer,*
660 S.W.2d 521 (Tex. 1983) ...............................................................23

*Fed. Sign v. Tex. S. Univ.,*
951 S.W.2d 401 (Tex. 1997)...............................................12, 17, 35, 36

*Gensetix, Inc. v. Bd. of Regents of Univ. of Texas System,*
966 F.3d 1316 (Fed. Cir. 2020) ...............................................9, 12, 14, 17

*Green Int'l, Inc. v. State,*
877 S.W.2d 428 (Tex. App.—Austin 1994, writ dism'd)............................30

*Harris Cnty. Fresh Water Supply Dist. No. 61 v. Magellan Pipeline Co., L.P.*, 649 S.W.3d 630 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) ..............................................................23

*Harris Cnty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793 (Tex. 2016).................................................................37

*Hicks v. Tex. Health & Human Servs. Comm'n*, No. 10-19-00256-CV, 2021 WL 3550335 (Tex. App.—Waco Aug. 11, 2021, no pet.) ................................................................10

*Jim Olive Photography v. Univ. of Houston Sys.*, 624 S.W.3d 764 (Tex. 2021).................................................................27

*Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829 (Tex. 2010).................................................................29

*Koch v. Tex. Gen. Land Off.*, 273 S.W.3d 451 (Tex. App.—Austin 2008, pet. denied)..............................33

*Loram Maint. of Way, Inc. v. Ianni*, 210 S.W.3d 593 (Tex. 2006).................................................................18

*MBP Corp. v. Bd. of Trs. of the Galveston Wharves*, 297 S.W.3d 483 (Tex. App.—Houston [14th Dist.] 2009, no pet.)..............................................................................32

*Mitschke v. Borromeo*, 645 S.W.3d 251 (Tex. 2022).................................................................36

*OptumRx, Inc. v. Advant-Edge Pharmacy*, 713 S.W.3d 460 (Tex. App.—Houston [14th Dist.] 2025, no pet.)..............................................................................22

*Samson Expl., LLC v. Bordages*, 694 S.W.3d 195 (Tex. 2024).................................................................18

*Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388 (Tex. 2016).................................................................22

*Sharyland Water Supply Corp. v. City of Alton*,
354 S.W.3d 407 (Tex. 2011).......................................................18, 19, 20, 21

*Smith v. Lutz*,
149 S.W.3d 752 (Tex. App.—Austin 2004, no pet.) ...................................30

*State v. Holland*,
221 S.W.3d 639 (Tex. 2007).................................................................29, 30, 31

*Stringfellow v. Tex. Dep't of Pub. Safety*,
No. 15-24-00024-CV, 2025 WL 996361 (Tex. App.—15th Dist.
June 27, 2025, pet. denied) .................................................................13, 26, 27

*Tex. A&M Univ. Sys. v. Koseoglu*,
233 S.W.3d 835 (Tex. 2007)........................................................................19

*Tex. Animal Health Comm'n v. Garza*,
980 S.W.2d 776 (Tex. App.—San Antonio 1998, no writ).........................22

*Tex. Dep't of Parks & Wildlife v. Miranda*,
133 S.W.3d 217 (Tex. 2004).......................................................................10

*Tex. Dep't of Transp. v. Self*,
690 S.W.3d 12 (Tex. 2024).....................................................................*passim*

*Tex. Nat. Res. Conservation Comm'n v. IT–Davy*,
74 S.W.3d 849 (Tex. 2002).....................................................................*passim*

*Tex. S. Univ. v. State St. Bank & Tr. Co.*,
212 S.W.3d 893 (Tex. App.—Houston [1st Dist.] 2007, pet.
denied) ...................................................................................................*passim*

*Univ. of Tex. Sw. Med. Ctr. at Dall. v. Est. of Arancibia ex rel.*
*Vasquez-Arancibia*,
324 S.W.3d 544 (Tex. 2010).......................................................................12

*Weingarten Realty Mgmt. Co. v. Liberty Mut. Fire Ins. Co.*,
343 S.W.3d 859 (Tex. App.—Houston [14th Dist.] 2011, pet.
denied) ....................................................................................................22

*Ford ex rel. Williams v. City of Lubbock*,
   76 S.W.3d 795 (Tex. App.—Amarillo 2002, no pet.)....................................11

*Zapata Cnty. Appraisal Dist. v. Coastal Oil & Gas Corp.*,
   90 S.W.3d 847 (Tex. App.—San Antonio 2002, pet. denied)......................22

**Statutes**

21 U.S.C. § 355....................................................................................................17

**Other Authorities**

6 Roy W. McDonald & Elaine A. Grafton Carlson, *McDonald &
   Carlson Texas Civil Practice* § 40:16 (2d ed. 2014)...........................................22

Texas Constitution article I, section 17 ...........................................................26

# Chart of Party Abbreviations

"<u>Gensetix</u>" means Plaintiff/Appellee Gensetix, Inc. It does not refer to the company "Gensetix, LLC," which was a previous holder of the patent license at issue in this case.

"<u>Board of Regents</u>" means Defendant/Appellant The Board of Regents of The University of Texas System.

"<u>UT System</u>" means Defendant/Appellant The University of Texas System.

"<u>M.D. Anderson</u>" means Defendant/Appellant The University of Texas M.D. Anderson Cancer Center.

"<u>UT</u>" means the Appellants collectively: Board of Regents, UT System, and M.D. Anderson.

## Argument in Reply

Gensetix contends this Court should permit its claims to proceed based on UT's termination of the License despite UT's sovereign immunity never being waived. First, Gensetix repeatedly distorts facts, inserts nonexistent terms into the License, references made-up factual findings, and exaggerates the impact the lower court's holding has on this Court's analysis. Although this case is in the pleading stage, Gensetix's Response Brief ("RB") tells a story that is both excessively antagonistic (mostly against persons and entities other than UT) and wholly unnecessary. Gensetix fabricates a convoluted conspiracy and supposed "egregious" conduct as a pretext for this Court to strip UT of the immunity from suit it is afforded as a state agency. But, even in its attempt to villainize UT, Gensetix's allegations remain premised on the License granted by UT and UT's termination of it. UT acted pursuant to the License and, therefore, sovereign immunity precludes the prosecution of Gensetix's claims.

Second, Gensetix's narrative does not advance its sovereign immunity arguments. Contrary to Gensetix's argument, the lower court's denial of UT's Plea to the Jurisdiction does not support the ostentatious implied findings of fact. Further, Gensetix's efforts to paint UT's conduct as

"egregious" are wasted. As this Court recently reconfirmed, the Texas Supreme Court has rejected the "waiver-by-conduct" doctrine pushed by Gensetix.

Third, Gensetix's attempt to side-step UT's sovereign immunity through a constitutional takings claim fails under both case law and logic. Gensetix alleged a "taking" resulted from terminating the License, which "destroyed" Gensetix's rights thereunder. A contractual act does not constitute a taking. Even in *Self*, the case championed by Gensetix, the Texas Supreme Court held "no compensation is owed when the government acts on its rights under a contract to which the parties have consented because it is not exercising sovereign powers." *Tex. Dep't of Transp. v. Self*, 690 S.W.3d 12, 27 (Tex. 2024). UT's termination of the License was an act under a contract and, therefore, cannot sustain a constitutional takings claim.

## I. GENSETIX'S STATEMENT OF FACTS DISTRACTS FROM THE SIMPLE CONTRACT DISPUTE UNDERLYING THIS CASE.

### A. The parties' contract and the contractual dispute.

The source of all Gensetix's rights, and the foundation of all its claims, is a contract—the Patent and Technology License Agreement (with amendments and assignments, the "License"). Without the License, Gensetix

has no rights arising from the Patents. Gensetix's claims are inextricable from the License: the breach of contract claim alleges breaches of contractual obligations outlined in the License and its takings claim is based on UT's termination of the License and Gensetix's right to manufacture, use, import, and sell *technology owned by UT*. Gensetix's Response suggests that Gensetix was a victim of a campaign of extortion with UT going to extreme lengths to deprive Gensetix of its property. In fact, Gensetix voluntarily accepted the terms of the License and then cried foul when UT exercised its rights under those terms.

### 1. The basis of Gensetix's claims: the License.

The License covered patent and technology rights pertaining to a method of modifying patients' immune systems to kill cancer cells developed at M.D. Anderson. The Board held the PATENT RIGHTS, defined as "information or discoveries described in invention disclosures, or claimed in any patents and/or patent applications." CR:48 (¶ 2.7). The Board also held the related TECHNOLOGY RIGHTS, which included rights to "any technical information, know-how, processes, procedures, compositions, devices, methods, formulae, protocols, techniques, software, designs, drawing, or data created by the inventors." CR:49 (¶ 2.12). Under the License, the PATENT

Rights and Technology Rights are collectively referred to as the Licensed Subject Matter (CR:47 (¶ 2.4)), which the Board of Regents owned. CR:67 (¶ 14.1).

When UT originally granted the License in 2008, the subject technology was not yet patented. *See* CR:73 (referring to invention numbers rather than patent numbers). The Licensee agreed to "pay the cost of searching, preparing, filing, prosecuting and maintaining" appropriate patent applications. CR:57 (¶ 6.1). UT explicitly disclaimed any representation or warranty as to the patentability, cost, or time required to undertake the patent application. CR:67-68 (¶ 14.3).

The Licensee acknowledged, represented and warranted that it "has not been induced in any way … to enter into the" License, that it "conducted sufficient due diligence," and, most importantly, that it had "adequate knowledge and expertise … to conduct such due diligence, and agrees to accept all risks inherent therein." CR:67-68 (¶ 14.4). The parties understood this was a license for technology that may not be patented (CR:50, 68 (¶¶ 3.1, 14.3)), and the Licensee knowingly bore that risk as well as the cost of pursuing patents. CR:51-52 (¶ 4.1(a)). Further, the License was subject to the payment by Licensee of all expenses, fees, costs, royalties, and other amounts

required by the License as well as providing quarterly reports identifying the "particulars of the business conducted by the Licensee." CR:50-54 (¶¶ 3.1, 4.1, 4.2).

Although UT originally granted the License to an individual, Alex Mirrow, Gensetix became the Licensee in 2014. *See* CR:46, 75. Gensetix agreed to "comply with all terms and conditions of the License Agreement." CR:75-76. In June 2014, the License was amended (the "Amendment"), which supplemented Gensetix's obligations under the License, particularly with respect to Gensetix's payment and reporting obligations. CR:79; *see also* CR:494-495 (emails with original Licensee regarding the need to get current). Thus, Gensetix voluntarily undertook a License whereby it agreed to be responsible for the cost of patent prosecution and maintenance, development and commercialization benchmarks, regular payments to UT, and quarterly reports providing updates and financials. CR:79.

Gensetix breached the License. UT sent a notice of breach and provided a 60-day cure period. CR:93-94. Gensetix failed to cure, and UT terminated the License in May 2020. 2SuppCR:4.

### 2. Gensetix's statement of facts and incorrect statements regarding findings.

Much of Gensetix's Statement of Facts concerns matters completely irrelevant to the sovereign immunity question presented or misstates the events leading up to this dispute. These distortions are more obvious when the terms of the License are considered.

For example, Gensetix villainizes UT for enforcing the License and those obligations Gensetix voluntarily assumed. It complains that "MDA was unwilling to invest its own money in prosecuting the patent." RB:9. But the License stated the "LICENSEE will pay the cost of searching, preparing, filing, prosecuting and maintaining [patent applications]." CR:57 (¶ 6.1). Gensetix complains that "MDA *extracted* from Gensetix a duty to actively pursue commercialization" of the licensed technology. RB:8 (emphasis added). First, MDA did not *extract* anything from Gensetix—Gensetix took an assignment of the License as it existed with Mirrow and then negotiated and voluntarily entered an Amendment to that License for Gensetix's own benefit. Second, the License obligated Gensetix to pursue commercialization. CR:56 (¶ 4.4 (requiring Gensetix to provide reports on its efforts to "diligently commercializ[e] LICENSED SUBJECT MATTER")); CR:63-64, 82

(¶13.2(a)-(b) (addressing consequences if Gensetix failed to provide sufficient evidence of commercialization or attempts to commercialize the technology)).

Gensetix also writes at length about actions and interactions among Gensetix and third parties that do not concern its claims against UT under the License. *See* RB:9-22 (concerning activities of a patent attorney, Gensetix's negotiations and work with Baylor College of Medicine and Dr. William Decker, a press release issued by a third-party, Diakonos, and matters involving another entity, Takeda Pharmaceutical); *see also* CR:536-552 (emails regarding the Licensee with parties other than UT). None of this is relevant to the question of whether sovereign immunity protects UT from Gensetix's suit. At best, it could possibly relate only to a waiver-by-conduct theory, which as this Court recognizes, the Texas Supreme Court has rejected.

Moreover, Gensetix's recitation deviates significantly from the allegations in its pleadings. Gensetix's Petition limits its takings claim to UT's termination of the License. CR:105-06. However, Gensetix's Brief suggests that the taking included "filing a motion invoking Eleventh Amendment immunity to extinguish Gensetix's sole means for asserting its

exclusive commercialization rights against Baylor and Diakonos." RB:45. By claiming "MDA asserted sovereign immunity, not a contract right, to appropriate Gensetix's property" (RB:47), Gensetix argues a taking different from what it pled. *See* CR:248. This shift is problematic for two reasons. First, Gensetix's petition defines the claims asserted, and Gensetix did not plead this claim.[1] Second, UT's refusal to join an infringement action did not result in the taking of Gensetix's property for a variety of reasons. Chief among them, the Federal Circuit, while affirming UT's sovereign immunity, held Gensetix could pursue its infringement action without UT. *See Gensetix, Inc. v. Bd. of Regents of Univ. of Tex. Sys.*, 966 F.3d 1316, 1327 (Fed. Cir. 2020). Thus, UT's invocation of immunity did not prevent Gensetix from enforcing its License.

## B. There are no factual findings — even implied ones.

Gensetix also erroneously suggests the trial court found facts and resolved credibility issues. *E.g.*, RB:49. That is incorrect and misleading. *See* CR:771 (trial court denied UT's Plea to the Jurisdiction without findings or opinion). Not only were there no findings, but findings would have no

---

[1] *See infra* at Section III.A.

bearing on this Court as jurisdictional appeals like this dispute are reviewed *de novo*. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Further, it would have been improper for the trial court to have done so because it ruled: (i) as a matter of law and (ii) without an evidentiary hearing.

Whether a court has subject matter jurisdiction is a question of law. *Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002). Where, as here, there is no fact question on the jurisdictional issue, the trial court rules on a plea to the jurisdiction as a matter of law. *See id.* And, the hearing in the district court on UT's Plea to the Jurisdiction consisted purely of arguments of counsel. *See* RR:5-26.

In *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, the Texas Supreme Court explained that where an issue is decided as a matter of law, "findings and conclusions can have no purpose and should not be requested, made, or considered on appeal." 938 S.W.2d 440, 443 (Tex. 1997). The Court gave examples where findings and conclusions serve no purpose, including "***dismissal for want of jurisdiction without an evidentiary hearing***." *Id.* (emphasis added); *see also Hicks v. Tex. Health & Human Servs. Comm'n*, No. 10-19-00256-CV, 2021 WL 3550335, at *2 (Tex. App.—Waco Aug. 11, 2021, no

pet.) ("Because we analyze a plea to the jurisdiction under the rubric of a summary judgment, … findings of fact and conclusions of law are not proper" and, in the context of a plea to the jurisdiction, "findings of fact are superfluous") (citing, inter alia, *Miranda* and *IKB*); *Ford ex rel. Williams v. City of Lubbock*, 76 S.W.3d 795, 796-97 (Tex. App.—Amarillo 2002, no pet.) (where trial court considered affidavits and deposition testimony, but no evidence was received at the hearing on a plea to the jurisdiction, findings of fact and conclusions of law serve no purpose).

Here, the trial court determined UT's Plea to the Jurisdiction without an evidentiary hearing. Findings of fact and conclusions of law were not warranted. It follows that the Court cannot imply findings, as Gensetix suggests, where express findings could not be properly considered.

## C. This Court can rule on the undisputed facts and law.

This Court need not be distracted by Gensetix's fantastical narrative of so-called "egregious" conduct. The pleadings and record contain unchallenged foundational jurisdictional facts and legal principles that compel the grant of UT's Plea to the Jurisdiction:

- Appellants are state entities. CR:100 (¶¶ 2-3).

- State entities have sovereign immunity. CR:100 (¶7).

- Absent a waiver, Sovereign immunity protects Appellants from suit for breach of contract claims. RB:57-59; *Univ. of Tex. Sw. Med. Ctr. at Dall. v. Est. of Arancibia ex rel. Vasquez-Arancibia*, 324 S.W.3d 544, 546 (Tex. 2010) ("Absent a waiver, governmental entities, like Southwestern, are generally immune from suits for damages.").

- Appellants did not waive immunity from suit simply by contracting with a private party. A "private citizen must have legislative consent to sue the State on a breach of contract claim. The act of contracting does not waive the State's *immunity from suit*." *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 408 (Tex. 1997); *see also Gensetix*, 966 F.3d at 1323 (observing "Gensetix acknowledges that UT did not waive sovereign immunity" by granting the License).

- Gensetix has not sought or obtained permission from the Legislature to sue UT, nor does it argue that its claim comes within any of the carefully crafted waivers of sovereign immunity created by the Legislature (and it does not).

- A plaintiff "cannot evade sovereign immunity with creative pleading." *Stringfellow v. Tex. Dep't of Pub. Safety*, No. 15-24-00024-CV, 2025 WL 996361, at *4 (Tex. App.—15th Dist. June 27, 2025, pet. denied).

- As pled, the affirmative actions that constitute the taking of Gensetix's property was the termination of the License. CR:105-106 (¶¶ 39-41).

Applying these undisputed facts and jurisdictional tenets, this Court can evaluate UT's Plea to the Jurisdiction and dismiss Gensetix's claims, tracking this Court's recent decision in *Curadev Pharma Pvt. Ltd. v. The Univ. of Tex. Sw. Med. Ctr.*, No. 15-25-00004-CV, 2025 WL 2414661, at *4 (Tex. App.—15th Dist. Aug. 21, 2025, no pet. h.). As this Court held in *Curadev*:

- Waiver by conduct is not a recognized doctrine. Therefore, UT's sovereign immunity precludes Gensetix's breach of contract claim. *Id*. at *7.

- A takings claim is not viable when, as here, it is premised on UT's rights and obligations under the License. *Id.* at *4 ("When the State acquires property through its contractual capacity, … there is no valid takings claim.").

Gensetix's claims are derived from its License with UT. Without a recognized waiver to sovereign immunity, there is no jurisdiction for Gensetix to pursue its breach of contract and takings claims. Therefore, consistent with this Court's ruling in *Curadev*, the trial court's ruling on UT's Plea to the Jurisdiction must be overturned and Gensetix's claims dismissed.

## II. SOVEREIGN IMMUNITY BARS GENSETIX'S BREACH OF CONTRACT CLAIM.

### A. The breach of contract claim that Gensetix pled.

Gensetix's breach of contract claim identifies three License provisions that UT allegedly breached. CR:106 (¶¶ 47-50).

First, Gensetix claims that UT breached an obligation relating to enforcement of patent exclusivity. CR:106 (¶ 47). Yet, that provision required Licensee to enforce the Patents against infringements. CR:58 (¶ 7.1). There was no obligation for UT to join as a nominal plaintiff and, ultimately, UT's sovereign immunity was affirmed, and the Federal Circuit permitted Gensetix's suit to proceed in UT's absence. *Gensetix*, 966 F.3d at 1327. The License does not require UT to expend State resources on enforcement actions when the Licensee fails to properly allege an infringement on UT's

Patents.[2] Plus, Gensetix's suit jeopardized UT's Patents because, in response, the defendants filed an action challenging the validity of UT's Patents with the US Patent Trial and Appeal Board ("PTAB"). *See* IPR2018-00948 and IPR2018-00949. UT availed itself of its Eleventh Amendment right to avoid such a suit because it has an obligation to protect its intellectual property and use state resources prudently – neither of which would be accomplished by a weak enforcement action.

Second, Gensetix claims UT breached the duty to "cooperate fully" in the infringement action under paragraph 7.2. CR:107 (¶ 48). But the License's text outlined the scope of that duty: "At the request and expense of the party bringing suit, the other party will permit access during regular business hours, to all relevant personnel, records, papers, information, samples, specimens, and the like in its possession." CR:59 (¶ 7.2). Gensetix complains that UT and M.D. Anderson "attempted to bill Gensetix for providing

---

[2] Tab 1 to Gensetix's Response catalogs 31 actions in which the UT System was involved in patent litigation. Gensetix cites this list as support for its narrative that UT's objection to the federal enforcement action was for "'no other reason' than improper reasons." RB:57. However, Gensetix ignores the most obvious reason: Gensetix pursued a bad claim that jeopardized UT's Patents. As Tab 1 demonstrates, UT will join an enforcement action when there is infringement and when its participation is necessary to protect UT's intellectual property and the Licensee's rights.

[information under paragraph 7.2]" (CR:107 (¶ 49)), but paragraph 7.2 affords only a duty to "permit access" and expressly sates that access will be at the "expense of the party bringing suit [i.e., Gensetix]." CR:59 (¶ 7.2). Gensetix's claim attempts to impose obligations not found in the License.

Third, Gensetix claims that UT breached paragraph 4.1(c) of the License by requiring Gensetix to make certain annual maintenance payments that it expressly agreed to pay. CR:107 (¶ 50). Gensetix does not dispute that it did not pay. Instead, Gensetix alleged UT breached this provision "by continuing to seek maintenance fees" when they were allegedly no longer due. *Id.* Two problems: First, UT provided Gensetix with the opportunity to cure the default, by paying the fee or establishing that it was not due – Gensetix did neither. *See* CR:93-94; 2SuppCR:4. Second, Gensetix claims the sums were not due to UT because there had been a first "Sale" of a Licensed Product. CR:107 (¶ 50). Yet, there was no Sale as defined by the License because the technology was not FDA approved, could not be sold, and the referenced trial was not conducted by Licensee.[3]

---

[3] Under paragraph 2.11, "Sale" was defined as "the transfer or disposition of a LICENSED PRODUCT for value ..." CR:49. And "LICENSED PRODUCTS means any product or service *sold by LICENSEE*." CR:47 (emphasis added). Even if a clinical trial could be considered a sale (and it cannot because the law prohibits the sale of new drugs prior to

**B.    The Texas Supreme Court and this Court have unequivocally rejected a waiver-by-conduct exception to sovereign immunity in breach of contract cases.**

Sovereign immunity bars contract claims against state entities, like UT, unless the plaintiff obtains legislative permission to sue. *Fed. Sign*, 951 S.W.2d at 408. Gensetix admittedly has not sought or obtained legislative permission to sue UT. RB:64.

Instead, Gensetix pled "UT and MD Anderson waived any claim to sovereign immunity by their egregious conduct, engaged in commerce by signing a contract with Gensetix, and expressly breaching their agreement." CR:101 (¶ 7).[4] Settled Texas law holds that merely entering a contract, or allegedly breaching it, does not waive sovereign immunity. *E.g.*, *Fed. Sign*, 951 S.W.2d at 408. This leaves only Gensetix's attempt to shoehorn a simple breach of contract claim into the "waiver-by-conduct" holding of *Tex. S. Univ. v. State St. Bank & Tr. Co.*, 212 S.W.3d 893 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("*State Street*")—an outlier because it is the ***only*** case

---

FDA approval (21 U.S.C. § 355)), Gensetix did not run the clinical trial (*see* CR:419 (¶ 58)) and, therefore, it did not transfer the LICENSED PRODUCT for value.

[4] Notably, Gensetix alleged waiver here even though it acknowledged in the prior federal court litigation "that UT did not waive sovereign immunity." *Gensetix*, 966 F.3d at 1323.

to ever find a state entity's sovereign immunity waived "by conduct."[5] That argument is unavailing. First, the Texas Supreme Court has unequivocally *refused* to adopt a waiver-by-conduct exception to sovereign immunity. Second, even if *State Street's* exception was good law, and it is not, that court's holding is limited to extraordinary factual circumstances that do not exist here.

Binding authority from the Supreme Court of Texas rejects the waiver of sovereign immunity by conduct theory applied in *State Street*. *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 857 (Tex. 2002) ("IT-Davy likewise relies on the *Federal Sign* footnote to ask this Court to fashion a waiver-by-conduct exception to the sovereign immunity rule. ***We decline to do so***.") (emphasis added).

As this Court recently recognized, a "***waiver-by-conduct argument is contrary to binding Supreme Court authority***, which instructs that sovereign

---

[5] Gensetix errs by attributing significance to the Supreme Court's denial of review in *State Street*. RB:59. The Supreme Court has reiterated, "denial of a petition for review does not indicate [the Court's] views on the merits of any particular issue." *Samson Expl., LLC v. Bordages*, 694 S.W.3d 195, 201 (Tex. 2024); *see also Loram Maint. of Way, Inc. v. Ianni*, 210 S.W.3d 593, 596 (Tex. 2006) (same). What Gensetix refuses to acknowledge is that, as discussed below, the Texas Supreme Court took the opportunity to "shut the door" on waiver of sovereign immunity by conduct – and did so – in *Sharyland*.

immunity may not be waived by a party's conduct but only by the Legislature." *Curadev*, 2025 WL 2414661, at *7 (emphasis added). This Court observed, "[i]n the years since its decision in *Federal Sign*, the Texas Supreme Court has repeatedly declined requests to recognize a waiver-by-conduct exception in a suit against a governmental entity and has emphasized that waivers of immunity generally should be left to the Legislature." *Curadev*, 2025 WL 2414661, at *8.[6] Evaluating a breach of contract claim against M.D. Anderson's sister institution, this Court soundly rejected arguments based on *State Street*, holding the "decision in *State Street* contradicts the Supreme Court's statements that the only avenue for waiver of sovereign immunity is through the Legislature." *Id.*

In addition, the Supreme Court's *Sharyland* decision foreclosed the suggestion that sovereign immunity could be waived by conduct; it unequivocally cannot. *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 414 (Tex. 2011). In *Sharyland*, the Court recognized that litigants (and perhaps the Justices in *State Street*) considered that the Court had not

---

[6] Citing *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 414 (Tex. 2011); *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007); *Catalina Dev., Inc. v. Cnty. of El Paso*, 121 S.W.3d 704, 705–06 (Tex. 2003); and *IT-Davy*, 74 S.W.3d at 857.

definitely foreclosed the possibility of applying a waiver-by-conduct theory. The Court used the *Sharyland* opinion to rectify this. The Court began by observing: "Five years after *Federal Sign*,. . . .we rejected the invitation to recognize such a waiver, holding that it was generally the Legislature's province to waive immunity." *Id.* The Court explained that "'[c]reating a waiver-by-conduct exception would force the State to expend its resources to litigate the waiver-by-conduct issue before enjoying the sovereign immunity's protections—and this would defeat many of the doctrine's underlying policies.'" *Id.* (quoting *IT-Davy*, 74 S.W.3d at 857).

The Legislature has provided avenues for redress that balances public and private interests. *Sharyland*, 354 S.W.3d at 414. This balance "would be thwarted if [the Court] allowed waiver-by-conduct exceptions in breach-of-contract actions against the government." *Id*. The *Sharyland* Court concluded *IT-Davy* was dispositive: "As in that case, *we reject the invitation to recognize a waiver-by-conduct exception in a breach-of-contract suit against a governmental entity*." *Id.* (emphasis added).

The Supreme Court's conclusion in *Sharyland* reflects that for over one hundred and fifty years, it has recognized that it is "the Legislature's sole province" to waive sovereign immunity. *IT-Davy*, 74 S.W.3d at 857. This

-20-

State's highest court defers to the Legislature on the issue of immunity because "this allows the Legislature to protect its policymaking function," as the Legislature is "better suited than courts to weigh the conflicting public policies associated with waiving immunity and exposing the government to increased liability, the burden of which the general public must ultimately bear." *Id.* Thus, if a private party enters a contract with the State, the Legislature must expressly waive the State's sovereign immunity before the private party can sue the State. *Id.* at 854. Otherwise, the State's sovereign immunity remains intact and defeats a trial court's subject matter jurisdiction. *Id.* at 855.

## C. Gensetix does not and cannot rebut binding precedent.

Gensetix does not attempt to reconcile its position with the direct rejection of waiver by conduct in *Sharyland* but instead dismisses it as dicta. RB:61. However, because the "waiver-by-conduct" issue was before the Court as a ripe dispute between the parties, Gensetix's argument is without merit. The Chief Justice, writing for a unanimous Court, deliberately addressed this issue to dispel confusion and provide unequivocal guidance. Its writing on the waiver-by-conduct doctrine is, at the very least, judicial dictum. The Texas Supreme Court recognizes that "[j]udicial dictum is a

statement made deliberately after careful consideration and for future guidance in the conduct of litigation." *Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 399 (Tex. 2016) (citation omitted).[7] "As such, '[i]t is at least persuasive and should be followed unless found to be erroneous.'" *Id.*[8] In fact, courts of appeals routinely refer to judicial dictum as "binding."[9] This Court should once again follow the Supreme Court's refusal to adopt waiver-by-conduct.

Gensetix also attempts to breathe life into *State Street* arguing it had been "cited approvingly in unanimous decisions as recently as April 2022." RB:59-60 (citing only *Harris Cnty. Fresh Water Supply Dist. No. 61 v. Magellan Pipeline Co., L.P.*, 649 S.W.3d 630 (Tex. App.—Houston [1st Dist.] 2022, pet.

---

[7] Texas law has "two types of dicta: judicial dictum and obiter dictum." *Seger*, 503 S.W.3d at 399.

[8] Quoting *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764, 773 (Tex. 1964); *see also* 6 Roy W. McDonald & Elaine A. Grafton Carlson, *McDonald & Carlson Texas Civil Practice* § 40:16 (2d ed. 2014) ("[D]ictum that constitutes an expression of opinion by the court on a point involved in the case, argued by counsel and deliberately passed on by the court, and which is included in the opinion for guidance of the bench and bar, is 'judicial dictum,' which is binding.").

[9] *E.g.*, *OptumRx, Inc. v. Advant-Edge Pharmacy*, 713 S.W.3d 460, 476 (Tex. App.—Houston [14th Dist.] 2025, no pet.); *Weingarten Realty Mgmt. Co. v. Liberty Mut. Fire Ins. Co.*, 343 S.W.3d 859, 872 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *Zapata Cnty. Appraisal Dist. v. Coastal Oil & Gas Corp.*, 90 S.W.3d 847, 853 n.2 (Tex. App.—San Antonio 2002, pet. denied); *Tex. Animal Health Comm'n v. Garza*, 980 S.W.2d 776, 777 (Tex. App.—San Antonio 1998, no writ).

denied)).[10] *Magellan*, however, was not decided based on waiver by conduct (at least as articulated by Gensetix); instead, the court held governmental immunity had been abrogated by the state entities' participation in litigation. 649 S.W.3d at 643, 645. More importantly, this Court is bound by the Texas Supreme Court's holdings, not an outlier decision of the First Court of Appeals.

**D.     Even if *State Street's* waiver-by-conduct theory were viable, Gensetix has not alleged facts that warrant its application to this standard contract dispute.**

In *State Street*, the court held "extraordinary factual circumstances" waived the State's sovereign immunity—that no other case "involved a situation in which a contract had been fully performed and the State refused to pay anything." 212 S.W.3d at 905. Despite the heated rhetoric in Gensetix's petition (alleging UT's conduct was "egregious"),[11] the facts here differ

---

[10] For the most part, Gensetix ignores the many cases that have rejected *State Street*, which are cited in Appellants' opening brief at 35-36, 38-39.

[11] Gensetix's brief continues in the same vein, writing "MDA's misconduct was profoundly duplicitous, unconscionable, and intolerable." RB:27. But the next sentence reveals the substance of Gensetix's complaint: "MDA for years insisted upon Gensetix's strict compliance with every obligation attached to [the License]." It is not egregious (or any of Gensetix's other invectives) for a contracting party to "compel his adversary to perform according to the contract terms as agreed upon by the parties." *English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983).

materially from the facts in *State Street*. In that case, (1) the University expressly represented to a contractor that its contract was "valid and enforceable"; (2) in reliance, the contractor fully performed—providing $13 million in equipment and services; then (3) the University claimed the contract was never valid, refused to make any payment whatsoever, and kept the equipment. *State Street*, 212 S.W.3d at 898-99, 907. By contrast, UT did not induce Gensetix to enter the License, Gensetix failed to perform, and Gensetix was not denied any payment owed. Moreover, UT did not repeatedly assure Gensetix that the License was valid and enforceable, only to then claim the License Agreement was invalid or unenforceable. Prior to its termination because of Gensetix's breach, the License was a valid and enforceable contract under which payment obligations resided with Gensetix, not UT. There were no misrepresentations or extraordinary circumstances; just a License that was terminated after the Licensee did not make required payments under the contract. Even if *State Street* was good law, the facts are inapposite to those that supported the invalid waiver-by-conduct in *State Street*.

This case concerns nothing more than a straightforward breach of contract claim. Gensetix was a Licensee. Gensetix failed to make

maintenance payments and provide progress reports required under the License and, consequently, UT terminated the License in accordance with its terms. CR:65, 93; 2SuppCR:4.[12] The License expressly states that UT does *not* waive its sovereign immunity rights. CR:70 (¶ 15.4).

Gensetix has not alleged any facts comparable to the facts in *State Street*. Consequently, even if such an exception were viable (and as shown above, it is not), UT never waived immunity from suit.

## III. GENSETIX'S CONSTITUTIONAL TAKINGS CLAIM ATTEMPTS TO REPACKAGE A CONTRACT CLAIM FOR WHICH UT IS IMMUNE.

Gensetix relies on *Self* to repackage its contract claim into a takings claim to avoid the bar of sovereign immunity. Gensetix's Response ignores the confines of the takings claim it pled. Even if UT was wrong to terminate the License (which it denies), Gensetix's allegations of wrongful termination of a License remain a contract dispute. And suggesting that UT's termination of a contract, as opposed to a private licensor, transforms a contract dispute into a taking is without merit or support.

---

[12] Gensetix now claims maintenance payments were not due but still does not explain its failure to provide required progress reports.

**A.** **Gensetix cannot circumvent sovereign immunity through creative pleading.**

Gensetix attempted to allege a constitutional "takings" claim under article I, section 17 of the Texas Constitution. CR:100-06. Gensetix's takings claim is based on UT's actions taken in accordance with, and Gensetix's alleged loss of rights under, the License. Gensetix alleged:

> 38. Gensetix in May 2020 had vested property consisting of an exclusive patent license ….
>
> 39. UT and MD Anderson, in or about May 2020, intentionally engaged in affirmative conduct affecting the exclusive patent license.
>
> 40 In or about May 2020, the exclusive patent license belonging to Gensetix was effectively destroyed due to the affirmative conduct of UT and MD Anderson.

CR:105-06. In May 2020, UT terminated the License following Gensetix's default and failure to cure in accordance with paragraph 13.3(b) of the License. CR:93-94; 2SuppCR:4.

"In reviewing pleadings to determine whether sovereign immunity has been waived, courts look to the substance of a plaintiff's claim, not the plaintiff's characterization of his claims." *Stringfellow*, 2025 WL 996361, at *3. Thus, Gensetix's claims are judged not by their form, but by their "real

substance." *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998).

A plaintiff "cannot evade sovereign immunity with creative pleading." *Stringfellow*, 2025 WL 996361, at \*4; *see also Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 547 (Tex. 2016) (same); *IT-Davy*, 74 S.W.3d at 856 ("private parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages, such as a contract dispute, as a declaratory-judgment claim"). And "[s]imply mentioning a constitutional provision is not enough to demonstrate a waiver of sovereign immunity, as 'immunity from suit is not waived if the constitutional claims are facially invalid.'" *Stringfellow*, 2025 WL 996361, at \*4 (quoting *Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 13 (Tex. 2015)).

"[T]he State retains its immunity in the absence of a properly pled takings claim." *Jim Olive Photography v. Univ. of Houston Sys.*, 624 S.W.3d 764, 777 (Tex. 2021). "Whether particular facts are enough to constitute a taking is a question of law." *Little-Tex*, 39 S.W.3d at 598.

The real substance of Gensetix's claims is for breach of contract only. Although Gensetix has labelled a claim as a constitutional taking:

- the sole basis for its rights to UT's Patents is the License, a contract;

- the sole basis of the alleged "taking" is UT's termination of the License;

- the alleged "exclusive patent license" that allegedly "was effectively destroyed" was granted to Gensetix pursuant to the License;

- Gensetix's alleged damages—money lost because it cannot convey a controlling interest in its rights under the License to a third party (CR:106 (¶ 43))—is the benefit of its bargain under that contract.

*See* CR:105-06. Gensetix did not allege UT acted out of an intent to use eminent domain to seize the rights conferred by the License. *See Little-Tex*, 39 S.W.3d at 598-99. Rather, Gensetix states that "At this stage, MDA's breach allegation is irrelevant. MDA failed to *conclusively* prove that it would have had the same right to terminate Gensetix's property interest *even if MDA had been a private party*, so it cannot avoid Takings liability for terminating it." RB:51 (emphasis in original). But the License identifies what contractual provisions permit termination, and UT invoked those provisions when providing Gensetix with an opportunity to cure. CR:46-88 (the License, including amendments), CR:93-94, 2SuppCR:4. Contrary to Gensetix's suggestion, UT presented evidence that the License was terminated pursuant to and consistent with the terms of the License that any private

party to the License could have done. Any party to a contract can terminate that contract under that contract's termination provisions; this is not a sovereign act. Indeed, Gensetix's allegations remain grounded in a contract dispute.

Gensetix's "takings" claim originates exclusively from the contract rights granted to Gensetix under the License and the alleged wrongful termination of those rights. This is a contract claim and nothing more.

### B. Regardless, Gensetix's takings claim still fails because UT lacked the necessary intent.

As shown in UT's opening brief (pp. 50-57), when a governmental entity is acting "within a color of right to take or withhold property in a contractual situation," it "is acting akin to a private citizen and not under any sovereign powers;" it "does not have the intent to take under its eminent domain powers" and "only has an intent to act within the scope of the contract." *Little-Tex*, 39 S.W.3d at 599.[13] To meet the intent element, the governmental entity "must have the requisite intent to be acting under its eminent domain powers, rather than merely withholding property or money

---

[13] The Texas Supreme Court has repeatedly reaffirmed this rule. *See Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 844 (Tex. 2010); *State v. Holland*, 221 S.W.3d 639, 644 (Tex. 2007).

in a contract dispute." *Smith v. Lutz*, 149 S.W.3d 752, 760 (Tex. App.—Austin 2004, no pet.); *see also Green Int'l, Inc. v. State*, 877 S.W.2d 428, 434-35 (Tex. App.—Austin 1994, writ dism'd) (same). Gensetix seeks to avoid this longstanding rule based on *Self*.

Gensetix argues the "'color of right' theory of immunity was recently abrogated in *Self*" and that *Little-Tex* is "now bad[] law." RB:39, 54. If that were true, the Texas Supreme Court would not have written in *Self* that "no compensation is owed when the government acts on its rights under a contract to which the parties have consented because it is not exercising sovereign powers." *Self*, 690 S.W.3d at 27. Nor would it have cited *Little-Tex*, 39 S.W.3d at 598-99 and *City of Anson v. Harper*, 216 S.W.3d 384, 392 (Tex. App.—Eastland 2006, no pet.) favorably for the proposition that "when the State acts as a party to a contract and exercises the same rights as would a private party, it is not acting as a sovereign, and a takings claim does not lie." *Id.* at 27 n.18. And, the Court could not have abrogated the "color of right" theory without mention of *Holland*, in which the Court held: "When the government acts pursuant to colorable contract rights, it lacks the necessary intent to take under its eminent-domain powers and thus retains its immunity from suit." *Holland*, 221 S.W.3d at 643.

-30-

Indeed, this Court recently recognized the continued vitality of the rule stated in *Holland* and applied it to hold that UT Southwestern Medical Center did not have "the requisite intent to take property under its sovereign powers as required for a constitutional takings claim" because it acquired certain property "by contract, not by its eminent domain powers." *Curadev*, 2025 WL 2414661, at *6. This Court's discussion of *Self* is instructive here. In *Curadev*, this Court wrote, "[t]he key to the holding in *Self* is that the State was exercising its eminent domain powers and did so mistakenly, beyond the terms of its easement. Here, Southwestern was not acting under its eminent domain power at all. It was acting pursuant to a contract and within the terms of that contract." *Curadev*, 2025 WL 2414661, at * 6. This finding is equally applicable to this matter before the Court.

UT acted pursuant to and consistent with the License. Gensetix agreed UT could terminate the License upon sixty days written notice if Gensetix defaulted on its payment and reporting obligations. CR:65. Gensetix defaulted. UT provided notice of default (CR:93) and subsequently terminated the License. 2SuppCR:4. Unlike *Self*, the License unquestionably addresses the matters in dispute here—Gensetix's payment and reporting obligations and UT's right to terminate for breach. That Gensetix disputes

whether it was in breach or obliged to make further maintenance payments does not change the analysis. *See MBP Corp. v. Bd. of Trs. of the Galveston Wharves,* 297 S.W.3d 483, 492 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (stating "[w]e need not decide which party's interpretation is correct to assess the trial court's subject-matter jurisdiction over the suit"). "Even if [UT's] contract interpretation is incorrect, as [Gensetix] suggests, that would not change the capacity in which the government is acting." *See id.* (citing *Holland*, 221 S.W.3d at 643 and *Green Int'l*, 877 S.W.2d at 434-35). UT exercised the same rights as any private party could have under the License; it was not acting as a sovereign, and a takings claim will not lie. *Self*, 690 S.W.3d at 27 n.18

Gensetix also cites *Canadian Riv. Mun. Water Auth. v. Hayhook, Ltd.,* No. 07-20-00196-CV, 2021 WL 1202346 (Tex. App.—Amarillo Mar. 30, 2021, no pet.) (mem. op.) to support its takings argument, but *Hayhook* supports UT. In *Hayhook*, the Water Authority constructed a water transmission pipeline across Hayhook's property. 2021 WL 1202346, at *1. But as the Water Authority admitted at trial, the parties' agreement did not include an easement for the pipeline at issue. *Id.* at *4. The court acknowledged authorities "suggesting that a governmental entity may still have acted

under color of contractual right even if it misinterpreted the contract." *Id.* The court found "a distinction between mistakenly interpreting the scope of an expressed contractual right and invoking a non-existent contractual right." *Id.* Here, as in *Hayhook,* the License expressly provides the contractual rights the parties have invoked, not a non-existent contractual right or rights the contract itself disclaims. *Hayhook* supports UT's contention that it was acting within a color of right under the License.

Likewise, the court in *Koch*, another case cited by Gensetix, recognized the rule that "when the State's withholding of property or money occurs in a contractual context, the State does not have the requisite intent to commit a taking, as it is 'acting within a color of right under the contract and not under its eminent domain powers.'" *Koch v. Tex. Gen. Land Off.*, 273 S.W.3d 451, 458 (Tex. App.—Austin 2008, pet. denied) (quoting *Little-Tex*, 39 S.W.3d at 599). The *Koch* court held that rule inapplicable because the State's actions were not taken pursuant to a contract. 273 S.W.3d at 458.

More than three years ago, at the hearing on UT's Plea to the Jurisdiction, Gensetix admitted it could cite no case holding a taking had occurred under similar facts. RR:24. Even today, Gensetix cites no case supporting its theory that a governmental patent owner's termination of a

License constitutes a "taking," and for good reason. UT did not "take" property belonging to Gensetix under its power as the State. Rather, UT, as Licensor, granted Gensetix a License to UT's Patents subject to conditions outlined in the License. When Gensetix did not comply with those conditions, UT terminated the License.[14] Gensetix's theory—that a party could defeat sovereign immunity by simply alleging a state entity effects a taking whenever it allegedly breaches a contract—would, if accepted, be the demise of sovereign immunity in all contract cases.

## IV. TEXAS LAW ENTITLES UT TO SOVEREIGN IMMUNITY TO COMPORT WITH LEGISLATIVE INTENT AND THE ESPOUSED POLITICAL, PECUNIARY, AND PRAGMATIC POLICIES.

The Court should not and cannot consider the abrogation of sovereign immunity and Gensetix's suggestion otherwise is without merit.[15] Even the trial court recognized the futility in Gensetix's argument, stating that while

---

[14] This case does not implicate any of Chief Justice Brister's concerns in *Curadev*. This is not a case where "the government takes money or property *belonging to B* pursuant to a contract the government has *with A*." 2025 WL 2414661, at * 11 (Brister, CJ, dissenting). Here, there is but one contract with Gensetix and UT acted pursuant to that contract and within its terms. Thus, this is not a case where property was "taken 'without any valid legal bases *other than* eminent domain.'" *See id.* at * 12. UT exercised contractual rights, not any power of eminent domain.

[15] Gensetix claims that "MDA admits that the one of the issues presented by this case is whether sovereign immunity should be abolished." RB:67 n.31. UT is neither advocating for nor encouraging this Court to consider this far-fetched argument.

sovereign immunity "may be a judge-created doctrine, but it is firmly in place in the statutory schemes as well as the Case Law that's developed over the last hundred-plus years. So, it's not likely that this Court is going to sit and declare the doctrine of sovereign immunity unconstitutional. So, I hope you didn't seriously think that was going to happen." RR:15:1-8.

Gensetix seems to argue two other things: (1) that this Court should at least abrogate sovereign immunity to the extent a state entity enters a contract with a private party (RB:66-69); and (2) that "Appellants should not be permitted to enter into contracts, reap their benefits, and then refuse to fulfill their obligations." RB:66.

The Texas Supreme Court has expressly rejected both arguments. In *Federal Sign*, it held: "The act of contracting does not waive the State's *immunity from suit.*" 951 S.W.2d at 408. And, in *IT-Davy*, it observed that "legislative control over waiving immunity from suit does not mean that the State can freely breach contracts with private parties, or that the State can use sovereign immunity as a shield to avoid paying for benefits the State accepts under a contract" because if a party who contracts with the State feels aggrieved, "it can seek redress by asking the Legislature to waive immunity

from suit." 74 S.W.3d at 854; *see also CPS Energy v. Elec. Reliability Council of Tex.*, 671 S.W.3d 605, 627 (Tex. 2023).

As shown above, absent clear legislative waiver, the Texas Supreme Court has consistently held the State retains sovereign immunity in breach of contract cases. This Court is bound by the Texas Supreme Court's decisions. *See, e.g., Burns v. City of San Antonio*, 712 S.W.3d 194, 210 n.6 (Tex. App.—15th Dist. 2025, pet. filed); *Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022) (describing as "commonplace and uncontroversial" the aspect of *stare decisis* "that lower courts must follow the precedents of all higher courts"). This Court cannot "abolish" sovereign immunity, nor can it affirm the trial court's order on that ground.

"Litigants have repeatedly asked [the Texas Supreme Court] to abrogate one or more aspects of the State's sovereign immunity." *Fed. Sign*, 951 S.W.2d at 409. The Texas Supreme Court, however, "has uniformly held that it is the Legislature's sole province to waive or abrogate sovereign immunity." *Id.* Thus, the Texas Supreme Court has already dismissed Gensetix's argument, even if there are a "growing number of states that have curtailed sovereign immunity." RB:66. This Court cannot ignore UT's sovereign immunity because, as the Texas Supreme Court has stated,

"sovereign immunity is universally recognized and fundamental to the nature and functioning of government, and that we leave it to the Legislature to make changes to that doctrine." *Harris Cnty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 808 (Tex. 2016).

## V.   CONCLUSION AND PRAYER

This Court should reverse the trial court's order denying UT's Plea to the Jurisdiction, and render judgment that Gensetix's claims be dismissed with prejudice.

By:  /s/ David E. Harrell, Jr.
**David E. Harrell, Jr.**
  State Bar No. 00793905
  David.Harrell@troutman.com
**Deanna Markowitz Willson**
  State Bar No. 24092759
  Deanna.Willson@troutman.com
**TROUTMAN PEPPER LOCKE LLP**
600 Travis St., Suite 2800
Houston, Texas 77002

**Thomas F. Loose**
  State Bar No. 12561500
  Tom.Loose@troutman.com
**TROUTMAN PEPPER LOCKE LLP**
2000 Ross Avenue, Suite 2800
Dallas, Texas 75201

**Terri M. Abernathy**
State Bar No. 24122680
Terri.abernathay@oag.texas.gov
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548, Capitol
Austin, TX 78711

ATTORNEYS FOR APPELLANTS

## Certificate of Compliance

I certify that this Reply Brief of Appellants complies with TEX. R. APP. P. 9.4(i) because the relevant portions of the Brief contain 7,442 words, as counted by Microsoft Word 365.

/s/ Thomas F. Loose
Thomas F. Loose

## Certificate of Service

Pursuant to TEX. R. APP. P. 9.5(e), I certify that a true and correct copy of the foregoing document was served via electronic filing on the 18th day of September 2025, to:

Anthony Buzbee
Ryan Pigg
BUZBEE LAW FIRM
600 Travis St., Suite 7500
Houston, TX 77002

Cabrach Connor
Jennifer Tatum Lee
Sergio Davila
CONNOR LEE & SHUMAKER PLLC
609 Castle Ridge Rd., Suite 450
Austin, TX 78746-5196

*Attorneys for Appellee*

/s/ Thomas F. Loose
Thomas F. Loose

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Krister Reyes on behalf of Thomas Loose
Bar No. 12561500
krister.reyes@lockelord.com
Envelope ID: 105796073
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Reply Brief of Appellants
Status as of 9/18/2025 4:21 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Terri Abernathy | | terri.abernathy@oag.texas.gov | 9/18/2025 4:10:27 PM | SENT |
| Victoria Gomez | | victoria.gomez@oag.texas.gov | 9/18/2025 4:10:27 PM | SENT |
| Thomas FLoose | | tom.loose@troutman.com | 9/18/2025 4:10:27 PM | SENT |
| David E.Harrell | | David.Harrell@troutman.com | 9/18/2025 4:10:27 PM | SENT |
| Deanna MarkowitzWillson | | deanna.willson@troutman.com | 9/18/2025 4:10:27 PM | SENT |
| Chris Dove | | Chris.Dove@troutman.com | 9/18/2025 4:10:27 PM | SENT |
| Monika Dziemianczuk | | monika.dziemianczuk@troutman.com | 9/18/2025 4:10:27 PM | SENT |
| Cabrach Connor | | Cab@CLandS.com | 9/18/2025 4:10:27 PM | SENT |
| Jennifer TatumLee | | Jennifer@CLandS.com | 9/18/2025 4:10:27 PM | SENT |
| Sergio Davila | | Sergio@CLandS.com | 9/18/2025 4:10:27 PM | SENT |
| Anthony Buzbee | | tbuzbee@txattorneys.com | 9/18/2025 4:10:27 PM | SENT |
| Ryan Pigg | | rpigg@txattorneys.com | 9/18/2025 4:10:27 PM | SENT |
| Rian Taff | | rtaff@txattorneys.com | 9/18/2025 4:10:27 PM | SENT |
| Mauricio Guevara | | mguevara@txattorneys.com | 9/18/2025 4:10:27 PM | SENT |
| Lionel Sims | | lsims@txattorneys.com | 9/18/2025 4:10:27 PM | SENT |